UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

THOMAS LAUMANN, FERNANDA GARBER,
ROBERT SILVER, GARRETT TRAUB,
DAVID DILLON and PETER HERMAN,
representing themselves and all other similarly
situated,

Plaintiffs,

- against -

NATIONAL HOCKEY LEAGUE, et al.,

Defendants.

------------------------------------------------------------

FERNANDA GARBER, MARC LERNER,
DEREK RASMUSSEN, ROBERT SILVER,
GARRETT TRAUB, and PETER HERMAN
representing themselves and all other similarly
situated,

Plaintiffs,

- against -

OFFICE OF THE COMMISSIONER OF
BASEBALL, et al.,

Defendants.

------------------------------------------------------------



**MEMORANDUM
OPINION AND ORDER**

**12 Civ. 1817 (SAS)**

**12 Civ. 3704 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Plaintiffs, subscribers of television and Internet packages for baseball

and hockey programming, brought two putative class actions against the National

Hockey League ("NHL") and Major League Baseball ("MLB"), various

clubs within the Leagues, regional sports networks ("RSNs") that televise the

games, and Comcast and DirecTV, multichannel video programming distributors

("MVPDs").[1]  Plaintiffs allege violations of the Sherman Antitrust Act based on

defendants' "agreements to eliminate competition in the distribution of [baseball

and hockey] games over the Internet and television [by] divid[ing] the live-game

video presentation market into exclusive territories, which are protected by

anticompetitive blackouts" and"collud[ing] to sell the 'out-of-market' packages

only through the League [which] exploit[s] [its] illegal monopoly by charging

supra-competitive prices."[2]  Defendants jointly moved to dismiss the Complaints.

In an Opinion and Order dated December 5, 2012, I granted the motion in part and

denied in part.[3]

---

[1]      Two cases have been consolidated.  *Laumann v. National Hockey League, et al.*, No. 12 Civ. 1817 ("*Laumann v. NHL*"), involves professional hockey telecasting, and *Garber v. Office of the Commissioner of Baseball, et al.*, No. 12 Civ. 3704 ("*Garber v. MLB*"), involves professional baseball telecasting.

[2]      *Laumann* Second Amended Complaint ("*Laumann* Compl.") ¶¶ 2, 8; *Garber* First Amended Complaint ("*Garber* Compl.") ¶¶ 2, 11.

[3]      *See Laumann v. National Hockey League*, No. 12 Civ. 1817, 2012 WL 6043225 (S.D.N.Y. Dec. 5, 2012).  Discovery commenced on December 19, 2012 and defendants filed Answers on January 17, 2013.

Comcast and DIRECTV now move on behalf of themselves and their affiliated RSNs (together "TV Defendants")  to stay the claims of the television subscriber plaintiffs  ("TV Plaintiffs")[4] pending the Supreme Court's ruling in *American Express Co. v. Italian Colors Restaurant* ("*AMEX III*") addressing the enforceability of arbitration clauses barring class arbitration as applied to federal antitrust claims.[5]  The MLB, its various affiliates, and teams within the league (together, "MLB Defendants") separately move to stay *Garber v. MLB* in its entirety pending the decision in  *AMEX III*.[6]  For the following reasons the motions to stay are denied.

## II.    BACKGROUND

Pursuant to their contracts for television service, TV Plaintiffs have

---

[4]    Garrett Traub is the sole remaining Comcast subscriber in *Laumann* and *Garber*.  Robert Silver is the sole remaining DIRECTV subscriber in *Laumann* and no DIRECTV subscriber remains in *Garber*.  *See Laumann*, 2012 WL 6043225.  This case also involves claims on behalf of plaintiffs who purchases Internet packages for baseball and hockey programming.  They are not alleged to have agreed to arbitrate their claims.

[5]    *See* Memorandum of Law in Support of Comcast and DIRECTV's Motion to Stay, No. 12 Civ. 3704 (Dkt. No. 88) ("TV Def. Mem.").  The Supreme Court granted certiorari in *AMEX III* on November 5, 2012, s*ee* No. 12 Civ. 133, 133 S. Ct. 594 (U.S. Nov. 9, 2012), and the case was argued on February 27, 2013.

[6]    *See* Memorandum of Law in Support of Joint Motion by the MLB Defendants, the Yankees and YES to Stay this Action ("MLB Def. Mem.").

entered into arbitration agreements with the TV Defendants – Traub with Comcast[7] and Silver with DIRECTV.[8]  Both agreements contain explicit class action waivers.[9]  In *AMEX III*, the Second Circuit declined to compel arbitration where a class action waiver contained in an arbitration agreement would "effectively deprive[] [plaintiffs] of the protection of the federal antitrust-law."[10]  The court recognized that two Supreme Court cases, *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* and *AT&T Mobility LLC v. Concepcion* "stand squarely for the

---

[7]	Traub agreed to arbitrate any "dispute, claim or controversy . . . regarding any aspect of [his] relationship with Comcast," which encompasses "all entities using the brand name 'Comcast.'"  Comcast Customer Privacy Notice § 13, Ex. 1 to 1/7/13 Declaration of Arthur J. Burke, Counsel for Comcast ("Comcast Agmt.").

[8]	Silver agreed to arbitrate "any legal or equitable claim relating to [his] Agreement, any addendum, or [his] Service" with DIRECTV.  DIRECTV Customer Agreement § 9, Ex. A to 1/7/13 Declaration of Louis A. Karasik, Counsel for DIRECTV ("DIRECTV Agmt.").

[9]	*See* Comcast Agmt. § 13(f); DIRECTV Agmt. § 9(c).

[10]	*In re American Exp. Merchants Litig.*, 667 F.3d 204, 219 (2d Cir. 2012).  Specifically, "if plaintiffs cannot pursue their [antitrust] allegations . . . as a [judicial] class, it is financially impossible for the plaintiffs to seek to vindicate their federal statutory rights."  *Id.*  Because the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758 (2010) "plainly precludes any court from compelling the parties to submit to class-wide arbitration where the arbitration clause is silent as to class-wide arbitration . . . if [plaintiffs] are not permitted to proceed in a judicial class action . . . [t]he defendant will [] have immunized itself against all such antitrust liability by the expedient of including in its contracts of adhesion an arbitration clause that does not permit class arbitration."  *Id.*

principle that parties cannot be forced to arbitrate disputes in a class-action arbitration unless the parties agree to class action arbitration."[11]   However, the court held that these cases left open the question "whether a mandatory class action waiver clause is enforceable even if the plaintiffs are able to demonstrate that the practical effect of enforcement would be to preclude their ability to bring federal antitrust claims."[12]   The Second Circuit answered this question in the negative and remanded with orders that the judicial class action proceed.[13]   The Supreme Court granted certiorari and heard argument on February 27, 2013.[14]

## III.   LEGAL STANDARD FOR GRANTING A STAY

A court "may decide in its discretion to stay civil proceedings"[15] pursuant to "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for

---

[11]     *In re American Exp. Merchants Litig.*, 667 F.3d at 213 (citing *Stolt-Nielsen*, 559 U.S. at 1775; *Concepcion*, 131 S. Ct. 1740,1750-51 (2011)).

[12]     *Id.* at 214.

[13]     *See id.* at 219-20.

[14]     *See AMEX III*, 133 S. Ct. 594.

[15]     *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (quotation omitted).

litigants.'"[16]  The party seeking the stay "bears the burden of establishing its

need."[17]  Factors to consider on a motion to stay include:  "(1) the private interests

of the plaintiffs in proceeding expeditiously with the civil litigation as balanced

against the prejudice to the plaintiffs if delayed; (2) the private interests of and

burden on the defendants; (3) the interests of the courts; (4) the interests of persons

not parties to the civil litigation; and (5) the public interest."[18]  In balancing these

factors, "the basic goal is to avoid prejudice."[19]

## IV.   DISCUSSION

TV Defendants argue that a stay is warranted because "[t]he Supreme

Court's decision in *AMEX III* . . . could significantly reshape both the *Laumann*

and *Garber* cases."[20]  Thus, they argue, "'it would be an inefficient use of time and

resources of the court and the parties to proceed' before the Supreme Court

---

[16]     *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).

[17]     *Id.* (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

[18]     *In re OxyContin Antitrust Litig.*, No. 10 Civ. 6038, 2012 WL 5184949, at *6 (S.D.N.Y. Oct. 19, 2012) (internal quotations omitted).

[19]     *Id.*

[20]     Reply in Support of Comcast and DIRECTV's Motion for Stay ("TV Def. Rep.") at 4.

rules."[21]  Moreover, a stay "will not prejudice TV Plaintiffs, and will promote the strong public policy favoring arbitration."[22]  Plaintiffs respond that "[b]ecause these cases will proceed – on a class basis – against all defendants, including DIRECTV and Comcast, Defendants cannot possibly show 'undue prejudice' in proceeding . . . according to the existing schedule."[23]

TV Defendants do not dispute that, under governing Second Circuit law the arbitration agreements are unenforceable.[24]  None of the MLB Defendants have arbitration agreements with any plaintiffs, and the Internet Plaintiffs do not have arbitration agreements with any defendants.  Moreover, although the MVPDs are not alleged to have conspired with each other, their involvement in the case is not limited to claims by their own subscribers.  Internet Plaintiffs have implicated TV Defendants in the blackout agreements in Internet packages.  In addition, the affiliated RSNs are broadcast by multiple non-affiliate MVPDs – a Comcast RSN

---

[21]     *In re OxyContin Antitrust Litig.*, 2012 WL 5184949, at *4 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, No. 21 M 90, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) (holding that courts frequently stay actions when a "higher court is close to settling an important issue of law").

[22]     TV Def. Mem. at 3.

[23]     Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Stay at 4.

[24]     The parties have stipulated to postpone motions to compel.

has no legal entitlement to require Silver, a DIRECTV subscriber, to arbitrate his antitrust claims against the Comcast RSNs and vice versa.[25]

Thus, while TV Defendants may be correct that a reversal in *AMEX III* could ultimately "drastically reduce [their] liability" by eliminating certain classes of claims against them, they have offered no evidence that their role in the pretrial proceedings scheduled between now and the likely issuance of a decision by the Supreme Court would be significantly impacted by the outcome in *AMEX III*. The notion that issues of liability in this antitrust case might be resolved before the Supreme Court rules is truly remote.[26]

The MLB Defendants' equally unrealistic solution to the TV

---

[25]    The Second Circuit has made clear that a non-signatory to an arbitration agreement cannot enforce an arbitration clause where its only relationship to the signatories is as a co-conspirator. *See Ross v. American Express, Inc.*, 547 F.3d 137, 147 (2d Cir. 2008) (declining to permit American Express to enforce an arbitration clause between plaintiffs and other credit card companies based on allegations of a conspiracy absent "some relationship between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex"). *See also In re Wholesale Grocery Prods. Antitrust Litig.*, No. 11 Civ. 3768, 2013 WL 514758, at *4 (8th Cir. Feb. 13, 2013) (declining to permit non-signatories to enforce arbitration clauses of other co-conspirators where "these antitrust conspiracy claims do not involve violation of the terms of the contract, the face of the contract does not provide the basis for the alleged injuries, and there is no evidence that the contract anticipated the precise type of relationship giving rise to the claims").

[26]    Currently, plaintiffs' class certification motions are due June 17, 2013. Fact discovery closes on October 18, 2013. *See* 1/3/13 Scheduling Order (*Garber* Dkt. No. 85).

Defendants' entanglement in the case is to request a stay of the entire case pending the hypothetical arbitration of two plaintiffs' claims with two defendants.  Their rationale rests on multiple layers of highly optimistic speculation – that the Supreme Court will reverse *AMEX III*, that the TV Plaintiffs will pursue their claims against the TV Defendants in arbitration despite the Second Circuit's finding that arbitration is prohibitive of just such claims, and finally, that this Court might, in its discretion, stay the entire antitrust case, including that of the Internet Plaintiffs, against the alleged core participants in the agreements – the Leagues themselves – pending the outcome of plaintiffs' arbitration claims.[27]

Nor is it the case, as TV Defendants argue, that because "TV Plaintiffs have sued the MVPD and RSN Defendants in an attempt to get around *Illinois Brick*'s indirect purchaser rule . . . dismissal of all TV Plaintiffs' claims against the MVPD and RSN Defendants would bear on the *Illinois Brick* issues."[28]  The fact that plaintiffs may have no judicial recourse against certain alleged conspirators in

_____

[27]    *See* MLB Def. Mem. at 2 ("The Second Circuit has recognized that, where some claims involving some parties are stayed pending arbitration, extending that stay to all other interrelated, but non-arbitrable, claims involving other parties furthers the 'strong federal policy' favoring arbitration.") (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)).  The MLB Defendants do not suggest that they would be entitled enforce the arbitration agreements.

[28]    TV Def. Rep. at 7.

an anti-competitive agreement because of arbitration agreements has no bearing on

the viability of their claims against core members of the alleged conspiracy.

TV Defendants have failed to show that staying this case, which is

currently in fact discovery, pending a decision in *AMEX III*, would avoid

significant prejudice to their rights to arbitrate claims with their subscribers. *If*, the

Supreme Court reverses in *AMEX III* or, if this case proceeds to a stage where

irreparable harm is a genuine threat, the Court can reconsider whether a stay is

warranted.  In the meantime, staying the case would merely delay litigation and

likely result in greater inefficiencies to the Court and litigants than simply

permitting the litigation to proceed on schedule.

## V.     CONCLUSION

For the foregoing reasons, defendants' motions to stay are denied in

full.  The Clerk of the Court is directed to close theses motions (*Garber* Dkt. Nos.

87, 90; *Laumann* Dkt. No. 100).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           March 6, 2013

-10-

**- Appearances -**

**For Plaintiffs**:

Kevin M. Costello, Esq.
Gary E. Klein, Esq.
Kevin R. Costello, Esq.
Klein Kavanagh Costello, LLP
85 Merrimac St., 4th Floor
Boston, Massachusetts 02114
(617) 357-5034

Edward A. Diver, Esq.
Howard I. Langer, Esq.
Peter E. Leckman, Esq.
Langer Grogan & Diver, P.C.
Three Logan Square, Suite 4130
1717 Arch Street
Philadelphia, Pennsylvania 19103
(215) 320-5663

Michael Morris Buchman, Esq.
John A. Ioannou, Esq.
Pomerantz Haudek Block Grossman & Gross LLP
600 Third Avenue
New York, New York 10016
(212) 661-1100

Alex Schmidt, Esq.
Mary Jane Fait, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

Robert LaRocca, Esq.
Kohn, Swift & Graf, P.C.
One South Broad Street
Suite 2100
Philadelphia, Pennsylvania 19107
(215) 238-1700

J. Douglas Richards, Esq.
Jeffrey Dubner, Esq.
Cohen, Milstein, Sellers & Toll, PLLC
88 Pine Street
New York, New York 10005
(212) 838-7797

**For Defendants Office of the Commissioner of Baseball, Major League Baseball Enterprises Inc., MLB Advanced Media L.P., MLB Advanced Media, Inc., Athletics Investment Group, LLC, The Baseball Club of Seattle, L.L.P., Chicago White Sox, Ltd., Colorado Rockies Baseball Club, Ltd., The Phillies, Pittsburgh Baseball, Inc., and San Francisco Baseball Associates, L.P.**

Bradley I. Ruskin, Esq.
Carl Clyde Forbes, Esq.
Helene Debra Jaffe, Esq.
Jennifer R. Scullion, Esq.
Robert Davis Forbes, Esq.
Proskauer Rose LLP
11 Times Square
New York, New York 10036
(212) 969-3465

Thomas J. Ostertag, Esq.
Senior Vice President and General Counsel
Office of the Commissioner of Baseball
245 Park Avenue
New York, New York 10167

(212) 931-7855

**For Defendants National Hockey League, NHL Enterprises, L.P., NHL Interactive Cyberenterprises, LLC, Chicago Blackhawk Hockey Team, Inc., Comcast-Spectacor, L.P., Hockey Western New York LLC, Lemieux Group, L.P., Lincoln Hockey LLC, New Jersey Devils LLC, New York Islanders Hockey Club, L.P. and San Jose Sharks, LLC**

Shepard Goldfein, Esq.
James A. Keyte, Esq.
Paul M. Eckles, Esq.
Matthew M. Martino, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

**For Defendants DirecTV, LLC, DirecTV Sports Networks, LLC, DirecTV Sports Net Pittsburgh, LLC a/k/a Root Sports Pittsburgh, DirecTV Sports Net Rocky Mountain, LLC a/k/a Root Sports Rocky Mountain, and DirecTV Sports Net Northwest, LLC a/k/a Root Sports Northwest**

Andrew E. Paris, Esq.
Joann M. Wakana, Esq.
Louis A. Karasik, Esq.
Alston & Bird LLP
333 South Hope Street
Los Angeles, California 90071
(213) 576-1000

**For Defendants Comcast Corporation, Comcast SportsNet Philadelphia, L.P., Comcast SportsNet Mid-Atlantic L.P., Comcast SportsNet California, LLC, and Comcast SportsNet Chicago, LLC**

Arthur J. Burke, Esq.
James W. Haldin, Esq.

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

**For Yankees Entertainment and Sports Networks, LLC and New York Yankees Partnership**

Jonathan D. Schiller, Esq.
Alan Vickery, Esq.
Christopher Duffy, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 446-2300

**For Defendants The Madison Square Garden Company and New York Rangers Hockey Club**

Marc Laurence Greenwald, Esq.
Stephen R. Neuwirth, Esq.
Richard I. Werder, Jr., Esq.
Ben M. Harrington, Esq.
Quinn Emanuel Urquhart Oliver and Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000