**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THOMAS LAUMANN, FERNANDA GARBER, ROBERT SILVER, GARRETT TRAUB, DAVID DILLON, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL HOCKEY LEAGUE et al.,<br><br>Defendants. | 12-cv-1817 (SAS) |

## ELECTRONICALLY STORED INFORMATION PROTOCOL

**I.     DEFINITIONS**

A.     **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media.  Non-limiting examples of ESI (which are provided without waiving the right of any party to object to the production of a specific type of ESI in this case, including but not limited to objections for relevance, undue burden, and/or inaccessibility) include:

- Digital communications (e.g., e-mail, voice mail, instant messaging);

- E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);

- Word processed documents (e.g., Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound Recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., .AVI and .MOV files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Notes, notepads and reminders;

- Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Computer Aided Design/Drawing Files;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO); and

- Virtualized ESI or Remote Storage Devices, e.g., cloud-based, internet-based, including application, infrastructure and data.

B.     **"Native data format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

C.     **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or

2

other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

      D.     **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

      E.     **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations — stored in any medium from which information can be obtained.

      F.     **"Media"** means an object or device, including but not limited to a disc, tape, computer or other device, whether or not in the producing party's physical possession, on which data is or was stored.

      G.     **"Parties"** means or refers to the named plaintiffs and defendants in the above-captioned matter, as well as any later added plaintiffs and defendants.

## II.     SEARCH TERMS AND PROTOCOL FOR ELECTRONIC DOCUMENTS

The parties agree to use their reasonable best efforts to reach agreement regarding the methodology to be used, and which methodology shall, and shall not, be applied to each category of documents requested and/or category of potentially responsive documents.

On or before February 15, 2013, the parties agree to confer in good faith regarding what categories of ESI, if any, shall be produced without the application of search terms. Examples of such categories could include electronically stored data that is already segregated such that an electronic search is not necessary, electronically stored data that is kept in such a manner that the use of search terms would not be effective or would not be the most efficient manner to locate and produce the relevant ESI. Defendants shall use their best efforts to begin their respective productions of such ESI by March 1, 2013. If the parties are not able to reach agreement

3

regarding what categories of ESI shall be produced without the application of search terms, the parties may seek a Court order to resolve the same. All other categories of potentially responsive ESI belonging to the Agreed Custodians shall be searched through the use of search terms, following the process identified below. Notwithstanding the foregoing, to the extent any party identifies responsive ESI or documents not hit upon by key word searches, all such non-privileged documents must be produced, subject to any agreements reached regarding the parties' objections to discovery requests.

  With respect to ESI, the fact that a document is captured by the application of the agreed upon search protocol does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. The discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the parties' conferral. For document requests and categories of ESI which the parties have agreed can be addressed by search terms, a party's obligation to conduct a reasonable search for documents in response to discovery requests shall be deemed satisfied by reviewing and/or otherwise producing documents that are captured by use of the agreed-upon search terms and search protocol.

  The parties agree that they will cooperate in good faith regarding the identification, disclosure and formulation of appropriate search terms, custodians, categories of potentially responsive ESI, and potentially relevant noncustodial sources and methodologies in advance of any ESI search or production. With the objective of limiting the scope of review and production, and thereby reducing discovery burdens, the parties agree to the following schedule:

  A.  **Step One – Identification of persons with substantial knowledge.** The defendants shall, on or before February 8, 2013, identify those persons whose files are likely to

4

contain documents relating to the subject matter of this litigation (each a "Custodian"), and provide company organizational charts or comparable documents (to the extent possible) covering the departments each such Custodian works or worked in. The parties shall meet and confer regarding the proposed Custodians for search and production, with a goal of reaching agreement on the Custodians to be searched (the "Agreed Custodians"). *Provided, however,* that nothing in this agreement shall limit the search for documents to the persons identified in these initial responses, and the parties agree to meet and confer in good faith regarding additional custodians for search and production who are identified as likely having non-duplicative responsive documents, regardless of when such person is identified. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and meet and confer regarding such request. If disputes over additional custodians still exist at the end of the meet and confer process, the parties will submit them to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with searching their data. Such letter, if necessary, shall be submitted within 10 business days of concluding the meet and confer process.

B.     **Step Two – Discussion regarding search terms.**   Plaintiffs shall provide a list of proposed search terms on February 1, 2013, which shall contain all search terms, including semantic synonyms (defined to include, without limitation, code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to relevant ESI) which they believe would lead to the identification of relevant documents. On or before February 15, 2013, the defendants shall provide any additional search terms that they believe are necessary to identify their clients'

responsive documents. These additional terms shall include any code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI that are not already on Plaintiffs' list. The parties shall meet and confer regarding the proposed search terms by February 22, 2013. The parties will use best efforts to agree to an initial set of search terms (the "Agreed Search Terms") by March 22, 2013.

C.     **Step Three – Document collection**. On or before February 8, 2013, the defendants shall identify the type of program(s) or systems in which their clients' ESI is generally stored. On or before February 22, 2013, the parties shall meet and confer to discuss the electronic search protocols and the categories of ESI to which such protocols will be applied (*i.e.,* algorithms, back-up disks/tapes/drives, document management systems to be searched, technology to be used, etc.) to be used in searching for responsive documents. The parties shall also discuss whether any of the formats identified by Defendants is anticipated to pose any technological challenges to implementing the search protocols.

D.     Following this meet and confer, each defendant will begin collecting potentially responsive documents, ESI, and information in the possession, custody or control of each Agreed Custodian, and/or additional locations such as shared drives, distribution lists or departmental files (collectively the "Collected Documents"), which collection efforts shall commence within 7 business days of finalization of the Agreed Custodian list.

E.     As to other individuals and electronic department files, the parties shall retain potentially responsive documents, but are not obligated to search and produce documents pending further discussion. *Provided, however,* that if a party wishes to rely on a non-public document for the purposes of summary judgment or trial that does not come from the files of an Agreed Custodian, the parties shall meet and confer to determine whether and to what extent the

party seeking to rely on the document must conduct additional discovery related to the individual from whose files the document was obtained.

      F.      **Step Four – Application of Agreed Search Terms**.  Within 7 business days of finalizing the Agreed Term list, and subject to Defendants' rights to take reasonable measures to cull plainly non-responsive data from individual data sets, each defendant shall proceed with the application of the Agreed Search Terms to all Collected Documents, including all related metadata.  Defendants shall explain to Plaintiffs all measures and methodologies taken to cull non-responsive data from individual data sets. Queries of email will be run against email and attachments (*i.e.*, both emails and their attachments shall be searched).  If either an email or any of its attachments is responsive and non-privileged, both the email and all attachments will be produced.  All queries will be run in a non-case sensitive manner, except as provided in the agreed-upon search protocol.  The population of documents returned from this process shall be removed from the total universe of Collected Documents and set-aside to be reviewed for production.  The application of the Agreed Search Terms to the Collected Documents shall be done on a rolling basis, and need not await the identification of all Collected Documents or all Custodians (*i.e.,* once a particular Custodian's Collected Documents are gathered, the Agreed Search Terms should be run through those documents, regardless of the status of other Custodian file reviews).

      G.      **Step Five – Disputed terms**.  For any proposed search terms which were not agreed to (the "Disputed Terms"), the parties shall use best efforts to promptly meet and confer regarding any disputes.  As part of that process, each defendant will disclose the number of aggregate and unique hits for each of the Agreed Terms and Disputed Terms, as well as the total number of documents searched for each group.  If Disputed Terms still exist at the end of the

meet and confer process, the parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with those search terms. Such letter, if necessary, shall be timely submitted upon completion of the meet and confer process.

H.    **Step Six – Additional terms for good cause**. Once a search term list is finalized (either through agreement of the parties or Order of the Court) and run for a Custodian, a party may propose additional search terms for consideration, but the producing party shall have no obligation to re-search that Custodian's electronic data using different or additional search terms without agreement or court order. Any party proposing additional search terms will have to show good cause, such as for example, that the information was unknown to them at the time the original list was prepared (i.e., the use of a "code name" or a "project name" that was not apparent from information known at the time; the failure of the producing party to include relevant terms on its initial list).

I.    **Step Seven – Continuing obligations**. The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including agreeing to modify any of the dates and time frame set forth in this protocol. Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit a party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority with respect to discovery obligations other than the search for and review of potentially relevant ESI. This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests, and it does not prevent any party from undertaking searches of its own ESI for its own purposes at any time.

## III.    PRODUCTION OF HARD COPY DOCUMENTS

A.    Documents or records which were either (i) originally generated as or converted

into ESI but now only exist in physical hard copy format, or (ii) originally generated in hard-copy format, that will be identified for production using a keyword search, shall be converted to a single page .TIFF file and produced following the same protocols set forth herein, including the production of OCR text that is generated to make such documents searchable.

B.    A producing party who desires to produce hard copy documents by means of a keyword search shall disclose and discuss the production of hard copy documents by means of keyword search on or before February 22, 2013, as part of the conferral process outlined in Section II above.  The parties shall confer regarding available fields of metadata that will be generated as part of the search protocol.

C.    The producing party shall identify the source of hard copy documents produced as hard copy by either populating a field that contains vendor-inserted information to identify hard copy documents or by providing a list of the Bates numbers that represent all hard copy production.  Nothing herein prevents the parties from agreeing to a separate protocol for the production of certain hard copy documents, including a protocol that does not include a keyword search.  To the extent any party identifies any responsive hard copy documents not hit upon by keyword searches, any such non-privileged documents must be produced, subject to any agreements reached regarding the parties' objections to discovery requests.

## IV.    FORMAT OF PRODUCTION

A.    **Document Image Format.**  With the exception of databases discussed in Section IV.K. and ESI discussed in Section IV.B., or unless otherwise agreed to in writing by a requesting party, at the sole option and cost of the producing party, non-reimbursable and non-taxable pursuant to 28 U.S.C. § 1920 or any other state or federal cost-recovery provision cost of the producing party, ESI shall be produced electronically as a single-page Group IV "TIFF" image that reflects how the source document would have appeared if printed out to a printer

9

attached to a computer viewing the file. Except for documents that have been redacted, spreadsheets, databases, PowerPoint and other presentation files, all media files, and any other category of documents agreed to by the parties, shall be produced in their native form via a native link in the load file. Provided, however, that, if a producing party has (a) reasonably notified a requesting party in writing that it objects on grounds of undue burden to production of certain documents, (b) reasonably identified the basis and scope of its claim of undue burden, and (c) reasonably identified the need to convert such documents to "TIFF" format and the costs that such conversion would entail as aspects of the undue burden asserted, then the producing party will not be precluded from seeking an agreement or court order that such costs should in whole or in part be shifted to, reimbursed by, or taxed against the requesting party; and further provided that no party shall be precluded from seeking recovery or taxation of costs for conversion to "TIFF" format of documents that the party can establish could not reasonably be produced as an initial matter in their native file formats. Nothing in this section or the remainder of this protocol precludes the requesting party from opposing any applications for shifting of costs.

All ESI, to the extent possible, will be processed with all hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) expanded, extracted, and rendered in the TIFF file. When processing ESI for review and for production, to the extent possible, the producing party will instruct its vendor to force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments. If the file cannot be expanded, it shall be identified and reviewed/produced in native format. Accompanying a TIFF production shall be a multipage text (.TXT) file containing searchable text from the native file, including, with regard to email, the email header text, and the metadata as discussed later in this document.

10

1.      Load files of the static images shall be created and produced together with their associated static images and native file links to facilitate the use of the produced images by a document management or litigation support database system.

2.      The parties shall meet and confer to the extent reasonably necessary to facilitate support software each party will use to review produced material, including the use of defendants' proprietary software or programs where necessary.

B.      **Native File Format.**  To the extent native files are produced without an accompanying rendering of TIFF images as provided in Section IV.A., a duplicate of the first page of such documents or a slip sheet may be produced in TIFF format to facilitate Bates and confidentiality stamping.  The associated load file shall include a link to the native item.  If production in native format is necessary to decipher the meaning, context, or content of a document produced only in TIFF format, the producing party promptly will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format.

C.      **Document Unitization.**  For files produced as TIFF images, each page of a document shall be electronically saved as an image file.  If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files.  The producing party shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting, including a separate load file for native documents:

11

**OCR and Extracted Text Files (.TXT Files)**:
- Single text file per document containing all the document's pages
- Pages separated by form feed character (decimal 12, hex 0xC)
- Filenames should be of the form:

  <Bates num>.txt

  Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

**Image Files**:
- Single page per image
- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable
- Filenames should be of the form:

  "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files**:
- "[**PROGRAM USED**] Default" delimited text file utilizing the following characters:
  - The "comma" delimiter is "" (020)
  - The "quote" delimiter is "þ" (254)
  - The "new line" delimiter is "®" (174)
- First line must contain the column/field names (set forth in Paragraph 1(c) herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

The parties agree to meet and confer in advance of any production of documents, and in consultation with their respective vendors, to discuss all unitization files/load file specifications.

   **D.    Duplicates.** To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a party's ESI data set, each party may produce only a single copy of a responsive document or record ("Single Production Copy"). Exact duplicate shall

mean bit-for-bit identicality of the document content.  For exact duplicate documents, the producing party will produce the metadata described in section III.J herein for the Single Production Copy, as well as any such metadata that differs for the duplicate document(s). Where any such documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.  The producing party shall populate a field of data that identifies each custodian who had a copy of the produced document in addition to a separate field of data identifying the custodian whose document is produced.  The parties reserve their rights to use a custom deduplication protocol.  Any party that intends to use a custom deduplication protocol shall inform the receiving party and shall disclose how the protocol functions to the receiving party. The parties agree to meet and confer over any disputes regarding deduplication protocols prior to seeking judicial intervention.

E.     **Color.**  At the producing party's option, ESI reduced to TIFF may be produced in black and white in the first instance.  Notwithstanding the foregoing, the producing party will endeavor to produce in color any ESI reduced to TIFF that contains color in instances where the color contributes to meaning, context, or content of the document.  In addition, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of a color image of the document.  Color production when reasonably necessary or requested will be at the non-reimbursable and non-taxable cost of the producing party subject to the proviso in section III.A herein.

F.     **Bates Numbering and Other Unique Identifiers.** For files produced as TIFF images, each page of a produced document, at the sole option and non-reimbursable and non-taxable cost of the producing party subject to the proviso in section III.A herein, may have a

13

legible, unique page identifier ("Bates Number") electronically "burned" onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with.  There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a Protective Order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order (including the parties' Joint Rule 26(f) Report and Protective Order).  In the case of Confidential Information, as defined in a Protective Order, or materials redacted in accordance with applicable law or Court order (including the parties' Joint Rule 26(f) Report and Protective Order), a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.  Any party producing ESI in a native data format only shall employ one of the following methods for purposes of identification: (1) the ESI shall be placed in a Logical Evidence Container that is Bates numbered; (2) the storage device (i.e., CD, USB, hard drive) containing such files shall be Bates numbered; or (3) the first page of the document or a slip sheet may be produced in TIFF format, as described in section III.B herein.  For (1) and (2), a spreadsheet shall also be contemporaneously produced providing a Bates number and confidentiality designation, if any, corresponding to the hash value of the document.

       G.     **Production Media.**  Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media").  The producing party shall accompany all document productions with a letter  (1) identifying by Bates number the custodial files from which the documents were produced (2) the production date, and (3) the Bates number range of the materials contained on such Production Media item.

H.     **Electronic Text Files.**  For files produced as TIFF images, text files for produced documents shall be produced reflecting the full text that has been electronically extracted from the original, native electronic files ("Extracted Text").  With respect to emails, the Extracted Text shall include email header information, including to, from, cc, bcc, subject, date, and the names of attachment files to the extent possible.  The Extracted Text shall be provided in UTF-8 format text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph III.H above, "Production Media".  The text files will be named with the unique Bates number of the first page of the corresponding document followed by the extension ".txt."

I.     **Metadata.**  The parties agree to produce the following list of metadata fields (to the extent available) to accompany each produced ESI file.  Unless otherwise specified, by producing metadata, the producing party affirms that such metadata came from its records, with the exception of vendor-entered source/custodian and document/production number fields.  The following list identifies the metadata fields that will be produced (to the extent available):

- Document number or Production number (including the document start and document end numbers).  This should use the standard Bates number in accordance with those used in previous productions.
- BegProd (beginning bates number of the first page of a document)
- EndProd (ending bates number of the last page of the document)
- BeginAttach (bates number associated with the first page of a parent document)
- EndAttach (bates number associated with the last page of the last attachment to a parent document)
- Attach Count (Number of attachments to an email or E-doc)
- Title/Subject (combine subject line for emails and title of E-docs into one field)
- File/folder path (the full path to the file at its original location)
- ParentID (Begin bates number for the parent email or E-doc)

- Family Date (for attachments only, corresponding to the sent or received date of the email to which the attachment is linked)
- Sent Date (for emails only)
- Sent Time (for emails only)
- Last Modified Date (all documents)
- Last Modified Time (all documents)
- Created Date (all documents)
- Created Time (all documents)
- Received Date (for emails only)
- Received Time (for emails only)
- Call Start (start date and time of a calendar or appointment)
- Last Accessed Date (all documents)
- Last Accessed Time (all documents)
- Last Print Date (for E-docs)
- Author (combine author of E-docs and FROM field in emails into one field)
- Recipients (TO field in emails)
- cc: (for emails only)
- bcc: (for emails only)
- Application (type of application used to generate the document)
- Source (custodian)
- Duplicate custodian (the name of any custodian whose duplicate file was removed during production)
- MD5 Hash Value
- Page Count (number of pages in a document)
- Original File Name (the original file name of an E-doc or attachment to an email)
- Doc extension (the file extension of a document)
- Full Text (the full path to the OCR/extracted text file on producing media)
- NativeLink (the full path to the native file produced)

When a metadata field includes a date, the date shall be provided in the following format: mm/dd/yyyy HH:mm:ss.  This provision, however, does not act as a waiver of any objections that may exist to the production of such file path data.

Notwithstanding the foregoing, the parties will meet and confer in good faith prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, burden) concerning the production of metadata.

J.       **Attachments.**  Email attachments and embedded files or links must be mapped to their parent by the Document or Production number.  If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded document must be included.

K.       **Structured data.**  To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties agree to meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information or upon the sets of data or fields to be included and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel.  Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

V.       **OBJECTIONS TO ESI PRODUCTION**

A.       Documents that present imaging or form production problems shall be identified and disclosed to the requesting party; the parties shall then meet and confer to attempt to resolve the problems.

B.      If either party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, the party, at or before the time the production is due under the Federal Rules of Civil Procedure, shall describe the nature of the objection with reasonable particularity and indicate whether the producing party is willing to offer an alternative.  The parties will promptly meet and confer in an attempt to resolve the objections if necessary.

C.      If in-house or outside counsel for the producing party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the party's document retention policies, the producing party shall explain where and when the ESI was last retrievable in its original format, and disclose the circumstances surrounding the change in status of that ESI, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.

## VI.    DESIGNATED ESI LIAISON

Each party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject ("Designated ESI Liaison"). The Designated ESI Liaison must:

(a) be prepared to participate in e-discovery discussions and dispute resolution;

(b) be knowledgeable about the party's e-discovery efforts;

(c) be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d) be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues,

18

and relevant information retrieval technology, including search methodology.

**SO ORDERED**.

Dated: _____ April 8 , 2013

_____
SHIRA A. SCHEINDLIN,
U.S.D.J.

SO STIPULATED.

_____
Shepard Goldfein
James A. Keyte
Paul M. Eckles
Matthew M. Martino
**SKADDEN, ARPS, SLATE,**
    **MEAGHER & FLOM LLP**
Four Times Square
New York, New York  10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
shepard.goldfein@skadden.com
james.keyte@skadden.com
paul.eckles@skadden.com
matthew.martino@skadden.com

*Attorneys for Defendants National Hockey League,
NHL Enterprises, L.P., NHL Interactive
Cyberenterprises, LLC, Chicago Blackhawk
Hockey Team, Inc., Comcast-Spectacor, L.P.,
Hockey Western New York LLC, Lemieux Group,
L.P., Lincoln Hockey LLC, New Jersey Devils LLC,
New York Islanders Hockey Club, L.P. and San
Jose Sharks, LLC*

_____
Bradley I. Ruskin
Jennifer R. Scullion
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York  10036-8299
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
bruskin@proskauer.com
jscullion@proskauer.com

*Attorneys for Defendants Office of the
Commissioner of Baseball, Major League
Baseball Enterprises Inc., MLB Advanced Media
L.P., MLB Advanced Media, Inc., Athletics
Investment Group, LLC, The Baseball Club of
Seattle, L.L.P., Chicago White Sox, Ltd.,
Colorado Rockies Baseball Club, Ltd., The
Phillies, Pittsburgh Baseball, Inc., and San
Francisco Baseball Associates, L.P.*

19

and relevant information retrieval technology, including search methodology.

**SO ORDERED.**

Dated: _____April 8_____, 2013

_____
SHIRA A. SCHEINDLIN,
U.S.D.J.

SO STIPULATED.

_____

Shepard Goldfein
James A. Keyte
Paul M. Eckles
Matthew M. Martino
**SKADDEN, ARPS, SLATE,**
**   MEAGHER & FLOM LLP**
Four Times Square
New York, New York  10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
shepard.goldfein@skadden.com
james.keyte@skadden.com
paul.eckles@skadden.com
matthew.martino@skadden.com

*Attorneys for Defendants National Hockey League,*
*NHL Enterprises, L.P., NHL Interactive*
*Cyberenterprises, LLC, Chicago Blackhawk*
*Hockey Team, Inc., Comcast-Spectacor, L.P.,*
*Hockey Western New York LLC, Lemieux Group,*
*L.P., Lincoln Hockey LLC, New Jersey Devils LLC,*
*New York Islanders Hockey Club, L.P. and San*
*Jose Sharks, LLC*

_____

Bradley I. Ruskin
Jennifer R. Scullion
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York  10036-8299
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
bruskin@proskauer.com
jscullion@proskauer.com

*Attorneys for Defendants Office of the*
*Commissioner of Baseball, Major League*
*Baseball Enterprises Inc., MLB Advanced Media*
*L.P., MLB Advanced Media, Inc., Athletics*
*Investment Group, LLC, The Baseball Club of*
*Seattle, L.L.P., Chicago White Sox, Ltd.,*
*Colorado Rockies Baseball Club, Ltd., The*
*Phillies, Pittsburgh Baseball, Inc., and San*
*Francisco Baseball Associates, L.P.*

19

Stephen R. Neuwirth
Richard I. Werder, Jr.
Ben M. Harrington
**QUINN EMANUEL URQUHART &**
   **SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
stephenneuwirth@quinnemanuel.com
rickwerder@quinnemanuel.com
benharrington@quinnemanuel.com

*Attorneys for Defendants The Madison Square
Garden Company and New York Rangers Hockey
Club*

Jonathan D. Schiller
Alan B. Vickery
Christopher E. Duffy
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
jschiller@bsfllp.com
avickery@bsfllp.com
cduffy@bsfllp.com

*Attorneys for Defendants New York Yankees
Partnership and Yankees Entertainment & Sports
Network, LLC*

Louis A. Karasik
Andrew E. Paris
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071-3004
Telephone: (213) 576-1148
Facsimile: (213) 576-1100
lou.karasik@alston.com
drew.paris@alston.com

*Attorneys for Defendants DIRECTV, LLC,
DIRECTV Sports Networks, LLC, DIRECTV Sports
Net Pittsburgh, LLC a/k/a Root Sports Pittsburgh,
DIRECTV Sports Net Rocky Mountain, LLC a/k/a
Root Sports Rocky Mountain, and DIRECTV Sports
Net Northwest, LLC a/k/a Root Sports Northwest*

Arthur J. Burke
James W. Haldin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4352
Facsimile: (212) 701-5352
arthur.burke@davispolk.com
james.haldin@davispolk.com

*Attorneys for Defendants Comcast Corporation,
Comcast SportsNet Philadelphia, L.P., Comcast
SportsNet Mid-Atlantic L.P., Comcast SportsNet
California, LLC, and Comcast SportsNet
Chicago, LLC*

20

_Ce. E. Sull_  4/4/13

Stephen R. Neuwirth
Richard I. Werder, Jr.
Ben M. Harrington
**QUINN EMANUEL URQUHART &
     SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
stephenneuwirth@quinnemanuel.com
rickwerder@quinnemanuel.com
benharrington@quinnemanuel.com

_Attorneys for Defendants The Madison Square
Garden Company and New York Rangers Hockey
Club_

Jonathan D. Schiller
Alan B. Vickery
Christopher E. Duffy
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
jschiller@bsfllp.com
avickery@bsfllp.com
cduffy@bsfllp.com

_Attorneys for Defendants New York Yankees
Partnership and Yankees Entertainment & Sports
Network, LLC_

Louis A. Karasik
Andrew E. Paris
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071-3004
Telephone: (213) 576-1148
Facsimile: (213) 576-1100
lou.karasik@alston.com
drew.paris@alston.com

_Attorneys for Defendants DIRECTV, LLC,
DIRECTV Sports Networks, LLC, DIRECTV Sports
Net Pittsburgh, LLC a/k/a Root Sports Pittsburgh,
DIRECTV Sports Net Rocky Mountain, LLC a/k/a
Root Sports Rocky Mountain, and DIRECTV Sports
Net Northwest, LLC a/k/a Root Sports Northwest_

Arthur J. Burke
James W. Haldin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4352
Facsimile: (212) 701-5352
arthur.burke@davispolk.com
james.haldin@davispolk.com

_Attorneys for Defendants Comcast Corporation,
Comcast SportsNet Philadelphia, L.P., Comcast
SportsNet Mid-Atlantic L.P., Comcast SportsNet
California, LLC, and Comcast SportsNet
Chicago, LLC_

20

Stephen R. Neuwirth
Richard I. Werder, Jr.
Ben M. Harrington
**QUINN EMANUEL URQUHART &**
    **SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
stephenneuwirth@quinnemanuel.com
rickwerder@quinnemanuel.com
benharrington@quinnemanuel.com

*Attorneys for Defendants The Madison Square*
*Garden Company and New York Rangers Hockey*
*Club*

Louis A. Karasik
Andrew E. Paris
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California  90071-3004
Telephone:  (213) 576-1148
Facsimile:  (213) 576-1100
lou.karasik@alston.com
drew.paris@alston.com

*Attorneys for Defendants DIRECTV, LLC,*
*DIRECTV Sports Networks, LLC, DIRECTV Sports*
*Net Pittsburgh, LLC a/k/a Root Sports Pittsburgh,*
*DIRECTV Sports Net Rocky Mountain, LLC a/k/a*
*Root Sports Rocky Mountain, and DIRECTV Sports*
*Net Northwest, LLC a/k/a Root Sports Northwest*

Jonathan D. Schiller
Alan B. Vickery
Christopher E. Duffy
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Floor
New York, New York  10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
jschiller@bsfllp.com
avickery@bsfllp.com
cduffy@bsfllp.com

*Attorneys for Defendants New York Yankees*
*Partnership and Yankees Entertainment & Sports*
*Network, LLC*

Arthur J. Burke
James W. Haldin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4352
Facsimile:  (212) 701-5352
arthur.burke@davispolk.com
james.haldin@davispolk.com

*Attorneys for Defendants Comcast Corporation,*
*Comcast SportsNet Philadelphia, L.P., Comcast*
*SportsNet Mid-Atlantic L.P., Comcast SportsNet*
*California, LLC, and Comcast SportsNet*
*Chicago, LLC*

Stephen R. Neuwirth
Richard I. Werder, Jr.
Ben M. Harrington
**QUINN EMANUEL URQUHART &
   SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
stephenneuwirth@quinnemanuel.com
rickwerder@quinnemanuel.com
benharrington@quinnemanuel.com

*Attorneys for Defendants The Madison Square
Garden Company and New York Rangers Hockey
Club*

Jonathan D. Schiller
Alan B. Vickery
Christopher E. Duffy
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Floor
New York, New York  10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
jschiller@bsfllp.com
avickery@bsfllp.com
cduffy@bsfllp.com

*Attorneys for Defendants New York Yankees
Partnership and Yankees Entertainment & Sports
Network, LLC*

Louis A. Karasik
Andrew E. Paris
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California  90071-3004
Telephone:  (213) 576-1148
Facsimile:  (213) 576-1100
lou.karasik@alston.com
drew.paris@alston.com

*Attorneys for Defendants DIRECTV, LLC,
DIRECTV Sports Networks, LLC, DIRECTV Sports
Net Pittsburgh, LLC a/k/a Root Sports Pittsburgh,
DIRECTV Sports Net Rocky Mountain, LLC a/k/a
Root Sports Rocky Mountain, and DIRECTV Sports
Net Northwest, LLC a/k/a Root Sports Northwest*

Arthur J. Burke
James W. Haldin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4352
Facsimile:  (212) 701-5352
arthur.burke@davispolk.com
james.haldin@davispolk.com

*Attorneys for Defendants Comcast Corporation,
Comcast SportsNet Philadelphia, L.P., Comcast
SportsNet Mid-Atlantic L.P., Comcast SportsNet
California, LLC, and Comcast SportsNet
Chicago, LLC*

20

_Edward Diver_ (signature)

Edward Diver
Howard Langer
Peter Leckman
**LANGER, GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Facsimile: (215) 320-5703
ndiver@langergrogan.com
hlanger@langergrogan.com
pleckman@langergrogan.com

*Attorneys for Plaintiffs*

_J. Douglas Richards_ (signature)

J. Douglas Richards
Jeffrey Dubner
**COHEN, MILSTEIN, SELLERS & TOLL, PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
drichards@cohenmilstein.com
jdubner@cohenmilstein.com

*Attorneys for Plaintiffs*

_Robert La Rocca /g.a.d_ (signature)

Robert LaRocca
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
rlarocca@kohnswift.com

*Attorney for Plaintiffs*

_Michael M. Buchman_ (signature)

Michael M. Buchman
John A. Ioannou
**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
mbuchman@pomlaw.com
jaioannou@pomlaw.com

*Attorneys for Plaintiffs*

_Kevin Costello /g.a.d_ (signature)

Kevin Costello
Gary Klein
**KLEIN KAVANAGH COSTELLO, LLP**
85 Merrimac Street, 4th Floor
Boston, MA 02114
Telephone: (617) 357-5500
Facsimile: (617) 357-5030
costello@kkcllp.com
klein@kkcllp.com

*Attorneys for Plaintiffs*

_Alex Schmidt /g.a.d_ (signature)

Alex Schmidt
Mary Jane Fait
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
schmidt@whafh.com
fait@whafh.com

*Attorneys for Plaintiffs*

21