# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-3610
DIRECT FAX
917-777-3610
EMAIL ADDRESS
SHEPARD.GOLDFEIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
-----
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

June 28, 2013

*A premotion conference is scheduled for July 15 at 5:30pm. SO ORDERED.*

*6/28/13 Shira A. Scheindlin USDJ*

VIA FACSIMILE

The Honorable Shira A. Scheindlin
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RE: *Laumann et al. v. National Hockey League et al.,*
12-cv-1817 (SAS)

Dear Judge Scheindlin:

Pursuant to this Court's Individual Rules and Procedures, the NHL Defendants respectfully request a pre-motion conference (for the next convenient date for the Court) concerning a proposed motion for summary judgment based on what the Supreme Court has characterized as a defendant's "quick look." The grounds of the proposed motion are that, based on a discrete set of indisputable facts, the alleged restraint on individual NHL Club out-of-market broadcasts may be upheld as lawful under the antitrust laws without the need of full rule of reason scrutiny. Specifically, it cannot be disputed that: "competitive balance" – highlighted in this Court's motion to dismiss opinion – is essential to the viability and success of the NHL; that the NHL's national broadcast contracts and out-of-market packages foster competitive balance because the revenues generated to the League from those contracts and packages are shared equally among NHL Clubs; and that the alleged restraint on individual teams prevents "free-riding" by the more popular teams and, hence, is ancillary and valid as a matter of law.

The Honorable Shira A. Scheindlin
June 28, 2013
Page 2

The scope of the NHL's proposed summary judgment motion is quite narrow. In accordance with Rule 56, we wish to explore the legal ramifications of the following undisputed facts:

- The NHL is a joint venture in which the member Clubs are economically interdependent.

- The maintenance of competitive balance is a legitimate and important goal of the League and essential to its success and profitability.

- The NHL has made the decision to distribute out-of-market broadcasts on a group basis through national broadcast contracts and the out-of-market packages at issue in this case – packages that no one Club could offer on its own.

- Revenues generated to the NHL from the NHL's national broadcast contracts and group licenses are shared equally among the Clubs, which serves the legitimate goal of promoting competitive balance.

- If permitted to offer their own out-of-market broadcast license, the most popular Clubs would have an incentive to "free ride" on the collective efforts of the other Clubs.

Significantly, for purposes of this proposed motion only, the NHL does not dispute Plaintiffs' contentions on other issues – e.g., market definition, harm to competition resulting from restrictions on individual Clubs, and causation (all subjects that will be vigorously contested and likely the subject of a broader summary judgment motion, if necessary). For purposes of this motion, the NHL also does not rely on other pro-competitive justifications for the alleged restraint.

The legal framework and basis for assessing these indisputable facts now is settled in light of *American Needle, Inc. v. Nat'l Football League*, 130 S. Ct. 2201, 2217 (2010) and *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) ("*Salvino*"). *American Needle* highlighted that a "quick look" rule of reason analysis may apply to restraints that are essential to the viability of the venture, further emphasizing that competitive balance also is a "legitimate and important" goal for professional sports leagues that "unquestionably . . . may well justify a variety of collective decisions made by the teams." 130 S.Ct. at 2217. Similarly, in affirming summary judgment for the Defendants in *Salvino*, the Second Circuit found that "competitive balance among the teams is essential to both the viability of the Clubs and public interest in the sport." 542 F.3d at 331-32. In analysis that is fully applicable here in light of *American Needle*, *Salvino* found that (i) certain products can be offered only at the league level (e.g., group licensing) and

The Honorable Shira A. Scheindlin
June 28, 2013
Page 3

that (ii) because of the economic interdependence among league teams, a restriction on individual team competition is a valid means of protecting against the externality of "free-riding" by the more popular teams. *See, e.g., Salvino*, 542 F.3d at 340 ("Because of the interdependence of the Clubs within the setting of a sports league, free riding would occur if one of the Clubs is able to benefit disproportionately from the actions of Major League Baseball or other Clubs in the licensing of products.").

The NHL respectfully submits that the application of *American Needle* and *Salvino* to the undisputed facts of this case leads to the ineluctable conclusion that the alleged restraint on individual Club out-of-market broadcasts are permissible as a matter of law on a "quick look." Specifically, Plaintiffs do not dispute that the out-of-market packages can be offered only at the league level. Further, there can be no dispute that revenues generated to the League from the NHL's national broadcast contracts and out-of-market packages are shared equally among clubs and therefore promote competitive balance. *See Salvino*, 542 F.3d at 328 ("unlike the NCAA restrictions on televising games, which were 'not even arguably tailored to serve' an interest in competitive balance, the Clubs' agreement that MLBP's profits from licensing MLB Intellectual Property will be distributed equally among the 30 Clubs is a precisely tailored attempt to achieve, or at least increase, competitive balance"). Indeed, here, Plaintiffs have not alleged or argued that the NHL's national broadcast contracts or out-of-market packages are themselves unlawful. Finally, it is indisputable that the more popular NHL Clubs have a particularly strong incentive to free ride on the League's success by offering their own out-of-market products – a well known externality that the alleged restraint here prevents from occurring. *Salvino*, 542 F.3d at 332-33 (direct licensing by individual Clubs "would result in the more popular Clubs granting more licenses and receiving more income" than less popular Clubs [which would] "foster a competitive *imbalance* among the Clubs."). Hence, in the "twinkling of an eye," this Court can conclude, on these discrete indisputable facts, that the alleged restraint on individual NHL Clubs is ancillary to a League package that fosters competitive balance, and, therefore, is valid under the Sherman Act as a matter of law.

Finally, as the Court suggested at the scheduling conference in this matter, we believe that consideration of this motion before class certification may be a more efficient way of proceeding in this case.

Respectfully submitted,

/s/ Shepard Goldfein

cc: Counsel of record (by email)