**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

THOMAS LAUMANN, FERNANDA GARBER, )
ROBERT SILVER, GARRETT TRAUB, )
DAVID DILLON, and PETER HERMAN, )
representing themselves and all others similarly )
situated, )          12-cv-1817 (SAS)
)
              Plaintiffs, )
)
         v. )
)
NATIONAL HOCKEY LEAGUE et al., )
)
              Defendants. )
———————————————————————
)
FERNANDA GARBER, MARC LERNER, )
DEREK RASMUSSEN, ROBERT SILVER, )
GARRETT TRAUB, and PETER HERMAN, )
representing themselves and all others similarly )
situated, )          12-cv-3704 (SAS)
)
              Plaintiffs, )          ECF Cases
)
         v. )
)
OFFICE OF THE COMMISSIONER OF )
BASEBALL et al., )
)
              Defendants. )
———————————————————————


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO**
**EXCLUDE THE OPINIONS AND TESTIMONY OF DR. JANUSZ ORDOVER**

## <u>TABLE OF CONTENTS</u>

P<small>AGE</small>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................2

I.      DR. ORDOVER IS EMINENTLY QUALIFIED TO OPINE ON THE ABSENCE
        OF COMMON IMPACT AND THE FLAWS IN DR. NOLL'S MODEL.......................2

II.     PLAINTIFFS' ARGUMENTS THAT DR. ORDOVER LACKS KNOWLEDGE
        OF THE FACTS AND HAS DONE NO ECONOMIC ANALYSIS ARE SPURIOUS ....6

CONCLUSION...........................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

PAGE

*Amorgianos v. Amtrak,*
   303 F.3d 256 (2d Cir. 2002) ............................................................................. 2

*Apple iPod iTunes Antitrust Litig.,*
   2014 WL 4809288 (N.D. Cal. Sept. 26, 2014) ................................................. 4

*Arden Architectural Specialties, Inc. v. Washington Mills Electro Minerals Corp.,*
   2002 WL 31421915 (W.D.N.Y. Sept. 17, 2002) .............................................. 4

*Baldwin v. EMI Feist Catalog, Inc.,*
   989 F. Supp. 2d 344 (S.D.N.Y. 2013) .............................................................. 2

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ......................................................................................... 2

*Discover Fin. Servs. v. Visa U.S.A., Inc.,*
    582 F. Supp. 2d 501 (S.D.N.Y. 2008) ........................................................... 4-5

*In re Fla. Cement & Concrete Antitrust Litig.,*
   2012 WL 27668 (S.D. Fla. Jan. 3, 2012) ......................................................... 3

*In re Hydrogen Peroxide Antitrust Litig.,*
   552 F.3d 305 (3d Cir. 2008) (amended Jan. 16, 2009) .................................... 3

*Kottaras v. Whole Foods Mkt., Inc.,*
   281 F.R.D. 16 (D.D.C. 2012) ........................................................................... 3

*McCullock v. H.B. Fuller Co.,*
   61 F.3d 1038 (2d Cir. 1995) ............................................................................. 5

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.,*
   247 F.R.D. 253 (D. Mass. 2008) ...................................................................... 4

*In re Online DVD Rental Antitrust Litig.,*
   2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ................................................. 4

*In re Optical Disk Drive Antitrust Litig.,*
   2014 WL 4965655 (N.D. Cal. Oct. 3, 2014) .................................................... 3

*Pecover v. Elec. Arts Inc.,*
   2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................................. 4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, LLC,
716 F. Supp. 2d 220 (S.D.N.Y. 2010)..................................................................... 2, 5

*In re Polyurethane Foam Antitrust Litig.*,
2014 WL 6461355 (N.D. Ohio Nov. 17, 2014) ........................................................ 3

*State of N.Y. v. Kraft Gen. Foods, Inc.*,
926 F. Supp. 321 (S.D.N.Y. 1995) .......................................................................... 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010).............................................................................. 3

STATUTES & RULES

Fed. R. Evid. 702 ............................................................................................................ 2

Defendants submit this memorandum of law in opposition to Plaintiffs' Motion to Exclude the Opinions and Testimony of Defendants' Expert Dr. Janusz Ordover.

## PRELIMINARY STATEMENT

Plaintiffs' motion represents the type of "reflexiv[e]" *Daubert* attack that the Court counseled against.[1]  Their motion does not challenge the principles and methodology employed by Dr. Ordover.  Plaintiffs also do not assail Dr. Ordover's impeccable credentials as an industrial organization and antitrust economist, which qualify him to opine on the absence of common impact and the flaws in Plaintiffs' damages model.  Based upon these credentials, courts have considered his expert opinions on class certification in numerous other antitrust cases involving a diverse variety of industries and products, including video games, hydrogen peroxide, grocery stores, concrete, and LCD panels.

Instead, Plaintiffs argue that Dr. Ordover lacks experience in so-called "sports economics."  But it is unsustainable to argue that a distinguished industrial organization and antitrust expert opining on economic issues in an antitrust case must have a "sub-specialization" in any specific industry, as confirmed by case law in this jurisdiction.  In any event, Plaintiffs are wrong to suggest that Dr. Ordover has not previously analyzed economic issues relating to sports (including professional hockey) and telecasting of sports content (including Regional Sports Networks ("RSNs")).

Plaintiffs also contend that Dr. Ordover lacks knowledge of "the basic structure and business of" Major League Baseball ("MLB") and the National Hockey League ("NHL").  But Plaintiffs support that sweeping claim with nothing more than minor mistakes in recollection

---

[1] *See Laumann* Dkt. 260/*Garber* Dkt. 333 (9/3 Order) at 2 (order in which the Court instructed the parties to "carefully consider the need for a *Daubert* motion," and counseled that "[n]ot every expert should be reflexively attacked under *Daubert*").

during his deposition, which had nothing to do with the contested economic issues relating to common impact.  Those inconsequential mistakes have no place in a *Daubert* motion.

Finally, Plaintiffs falsely assert that Dr. Ordover has not conducted "any economic analysis at all" in support of "his basic conclusions about the but-for world."  That assertion is belied by no fewer than 43 paragraphs spanning 23 pages of his declaration, which describe his analysis and conclusions, as further discussed in his deposition.

For these reasons, and the additional reasons set forth below, Plaintiffs' motion should be denied.

## ARGUMENT

Dr. Ordover's testimony is admissible because it is relevant and reliable.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Baldwin v. EMI Feist Catalog, Inc.*, 989 F. Supp. 2d 344, 349 (S.D.N.Y. 2013) (Scheindlin, J.).  It is well-established that in weighing a *Daubert* challenge, a court should "focus on the principles and methodology employed by the expert."  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 716 F. Supp. 2d 220, 224 (S.D.N.Y. 2010) (Scheindlin, J.) (internal quotation marks omitted); *accord*, *e.g.*, *Amorgianos v. Amtrak*, 303 F.3d 256, 266 (2d Cir. 2002).  Yet Plaintiffs' motion does not challenge the principles and methodology that Dr. Ordover utilizes, and instead focuses principally on assailing his qualifications and his knowledge of certain facts.  As demonstrated below, Plaintiffs' attacks are devoid of merit.

## I.   DR. ORDOVER IS EMINENTLY QUALIFIED TO OPINE ON THE ABSENCE OF COMMON IMPACT AND THE FLAWS IN DR. NOLL'S MODEL

Plaintiffs concede Dr. Ordover's experience as an industrial organization and antitrust expert.  *See* Pl. Mem. at 2.  And for good reason:  Dr. Ordover is a preeminent expert in those fields, with decades of experience, including as chief economist for the Antitrust Division of the

U.S. Department of Justice, and as a Professor of Economics at New York University since 1982.  *See* Ordover Decl. ¶¶ 1-3; Ordover C.V. [2]  His publications in those fields include more than 50 articles and book chapters.  *See* Ordover C.V. at 5-11.

      Dr. Ordover has provided expert opinions on impact or damages in many other antitrust cases, including at least ten in which he provided expert opinions about common impact for purposes of class certification.  *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 322-25 (3d Cir. 2008) (amended Jan. 16, 2009) (finding that district court erred in not considering Dr. Ordover's opinions that "raised substantial doubts . . . about whether common proof would be available for plaintiffs to demonstrate antitrust impact at trial"); *In re Optical Disk Drive Antitrust Litig.*, 2014 WL 4965655, at *1, 9 (N.D. Cal. Oct. 3, 2014) (agreeing with Dr. Ordover that plaintiffs did not present a "viable methodology for establishing class-wide antitrust injury and damages"); *In re Fla. Cement & Concrete Antitrust Litig.*, 2012 WL 27668, at *8, 14 (S.D. Fla. Jan. 3, 2012) (in denying class certification, court relied heavily on Dr. Ordover's "persuasive" opinion that "an individualized inquiry is necessary to assess whether any given putative class member paid more as a result of the purported conspiracy"); *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 20-25 (D.D.C. 2012) (rejecting plaintiff's motion to strike Dr. Ordover's report and testimony and denying class certification based on Dr. Ordover's opinion that determining which customers were harmed by the merger of two grocery stores would require individualized inquiry into "the items actually purchased by each consumer and the changes in price of each item.").[3]  As illustrated in these cases, multiple courts have

---

      [2] Dr. Ordover's curriculum vitae is available online at www.compasslexecon.com/professionals/bio?id=120.

      [3] *See also In re Polyurethane Foam Antitrust Litig.*, 2014 WL 6461355, at *23 (N.D. Ohio Nov. 17, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 312 (N.D. (....continued)

expressly relied on Dr. Ordover's opinions in ruling on class certification, and no court has

excluded Dr. Ordover's opinions as unreliable under *Daubert*.[4]

Despite acknowledging this extensive experience, Plaintiffs quibble that Dr. Ordover is

not a true expert in so-called "sports economics" – a field that they fail to define, much less

explain why it has any bearing on Dr. Ordover's opinions in this action.  *See* Pl. Mem at 2.  But

Dr. Ordover's history of testifying in cases involving a variety of industries shows that his

expertise is an appropriate qualification for opining on economic issues in any antitrust case,

without any need for sub-specialization in the particular industry.  Tellingly, Plaintiffs cite no

authority for the proposition that an expert economist's opinions are inadmissible under Rule 702

unless he sub-specializes in the particular industry at issue.  Indeed, the supposed need for

specific industry expertise is not reflected in Dr. Noll's own expert work.  Dr. Noll recently

testified on antitrust impact and damages in the unsuccessful *Apple iPod iTunes Antitrust*

*Litigation*, in which Dr. Noll was found "qualified to render opinions on economics and

econometrics," even though he has never held himself out as an expert in "portable music device

economics" or some such *ad hoc* field.  *See Apple iPod iTunes Antitrust Litig.*, 2014 WL

4809288, at *2-4 & n.8 (N.D. Cal. Sept. 26, 2014).

Case law in this jurisdiction confirms that no industry sub-specialization is required to

testify on economic issues in an antitrust case.  *See*, *e.g.*, *Discover Fin. Servs. v. Visa U.S.A.,*

---

(continued….)

Cal. 2010); *Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *23 (N.D. Cal. Dec. 21, 2010); *In re Online DVD Rental Antitrust Litig.*, 2010 WL 5396064, at *9 (N.D. Cal. Dec. 23, 2010); *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 272 (D. Mass. 2008); *Arden Architectural Specialties, Inc. v. Washington Mills Electro Minerals Corp.*, 2002 WL 31421915, at *10 (W.D.N.Y. Sept. 17, 2002).

[4] Plaintiffs' criticism that Dr. Ordover has consistently testified against class certification, by which they suggest that Dr. Ordover does not fairly evaluate the issues, disregards the cases in which Dr. Ordover declined to become involved.  *See* Pl. Mem. at 2.

*Inc.*, 582 F. Supp. 2d 501, 503-04 & n.3 (S.D.N.Y. 2008) (court found that a proffered expert in an antitrust matter was "qualified as an expert witness in the field of economics" and able to offer a damages model related to causation based on allegedly anticompetitive credit card practices "given his extensive credentials, including his education, experience and *general knowledge* of the subject matter") (emphasis added); *State of N.Y. v. Kraft Gen. Foods, Inc.*, 926 F. Supp. 321, 356 (S.D.N.Y. 1995) (court found an expert economist "reliable" in his testimony regarding the substitutability of specific products (breakfast cereal) based on his expertise "in the principles of microeconomics and in regression analysis" and "written scholarly work in the fields of microeconomics, econometrics, and antitrust economics"); *see also McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042-43 (2d Cir. 1995) (affirming admission of expert testimony as to a specific subject matter within the expert's general expertise, notwithstanding other party's "quibble" with the expert's knowledge regarding certain specialized issues); *Pension Comm.*, 716 F. Supp. 2d at 225 (Scheindlin, J.) ("[C]ourts in the Second Circuit generally take a liberal approach to the qualifications requirement.").

In any event, Plaintiffs' argument that Dr. Ordover lacks experience relating to sports ignores his past work concerning his economic analysis of the substitutability between different professional hockey teams (Ordover Dep. at 118:4-119:21); his opinions and deposition testimony in a case "involving professional sports in the context of sports product distribution" (*id.* at 117:12-24); his economic analysis of the vertical aspects of the distribution of sports content, including a focus on RSNs and their relationships to teams and MVPDs (*id.* at 137:8-139:22); his submission of a report in a lawsuit involving collegiate athletic (Pac-10) media rights (*id.* at 114:11-115:2)[5]; and his teaching of sports issues in an industrial organization

_____

[5] *See Pappas Telecasting, Inc. v. Prime Ticket Network*, No. 92-cv-5589 (E.D. Cal.).

economics course (*id.* at 104:4-24).[6]  Plaintiffs also disregard Dr. Ordover's extensive experience testifying and consulting in antitrust matters involving media and video distribution markets over the past two decades.  *See* Ordover Decl. ¶ 2.  Together with his undisputed qualifications as an industrial organization and antitrust economist, this experience amply qualifies Dr. Ordover to offer expert testimony in this matter.

## II.   PLAINTIFFS' ARGUMENTS THAT DR. ORDOVER LACKS KNOWLEDGE OF THE FACTS AND HAS DONE NO ECONOMIC ANALYSIS ARE SPURIOUS

Plaintiffs' argument that Dr. Ordover "is not generally knowledgeable about the basic structure and business of" MLB and the NHL rests on trivial misstatements during Dr. Ordover's deposition.  Plaintiffs attribute exaggerated significance to Dr. Ordover's misidentification of the Commissioner of Baseball, and absurdly argue that Dr. Ordover's immediately corrected transposition of the names of two baseball teams is evidence that Dr. Ordover "had little knowledge of the leagues generally."  *See* Pl. Mem. at 3 & n.15; *see also* Ordover Dep. at 226:20-227:10 (six lines after mistakenly referring to the "Tampa Royals . . . visiting Kansas City," Dr. Ordover corrected himself by referring to "[t]he Kansas City Royals . . . playing with the Tampa team . . . .").

Plaintiffs' reliance on this minutiae highlights the disconnect between their attack on Dr. Ordover's expertise and his opinions bearing on class certification, which Plaintiffs' motion does not challenge on the merits.  Regardless of the identity of the Commissioner of Baseball or the name of any MLB team, there is no common impact in this case and Dr. Noll's model is fatally

---

[6] Plaintiffs' assertion that Dr. Ordover did not "read any of the articles on sports economics authored by Professor Noll or cited in Dr. Noll's declaration," Pl. Mem. at 2-3, misstates Dr. Ordover's testimony.  Dr. Ordover testified that he has "read some of [Dr. Noll's] work over the years," although not specifically the articles cited in Dr. Noll's declaration. Ordover Dep. at 111:3-23.

flawed.  Nit-picking Dr. Ordover's performance on the quiz that Plaintiffs' counsel administered during his deposition has no place in a *Daubert* motion.

Plaintiffs also assert that "[i]n support of his basic conclusions about the but-for world . . . Dr. Ordover relies entirely on the declarations of party witnesses without having done any economic analysis at all."  Pl. Mem. at 3.  That assertion is refuted by even a cursory review of Dr. Ordover's declaration, in which he undertook significant economic analysis of the incentives of content owners, producers and distributors; the heterogeneity of viewer preferences; the lack of substitutability of different teams' live games; and the likely reactions of market participants to changed circumstances in the but-for world.  *See* Ordover Decl. ¶¶ 21-63.  Based on this economic analysis, Dr. Ordover concluded, among other things, that the League packages would not exist in the but-for world or would cost more than in the actual world, resulting in "winners" and "losers" among purported class members and the need for individualized inquiry to determine impact – thereby negating common impact.  *See id.*  In addition, Dr. Ordover analyzed Dr. Noll's damages model and identified serious flaws that undermine its predictions regarding the but-for world.  *See id.* ¶¶ 64-103.

Finally, Plaintiffs argue that "Dr. Ordover's but-for world does not present an accurate portrayal of broadcast rights."  Pl. Mem. at 6 (capitalization altered).  That argument fails for two related reasons.  First, Plaintiffs' attack relies on their speculation that legal rights in the hypothetical but-for world would be allocated the same way that they are in the actual world – even though Plaintiffs' but-for world necessarily depends on a fundamentally dissimilar allocation of rights.  Thus, Plaintiffs criticize Dr. Ordover's opinion that *in the but-for world* RSNs would charge the Leagues a fee for their feeds by arguing that *in the actual world* "RSNs are not the relevant owners and have nothing that they could charge the clubs (or the leagues)

for," because RSNs are licensed only "in market" rights.  Pl. Mem. at 7.  But this criticism is

inconsistent with Plaintiffs' own but-for world where, unlike in the actual world, RSNs would be

licensed the rights to telecast live games nationwide (*i.e.*, without Home Television Territory

restrictions).  *See* Noll Supp. Decl. at 24.[7]  Indeed, Plaintiffs' own expert concedes that, if the

Leagues' territorial rules were eliminated, at least "six months" of renegotiations would be

needed to alter contractual relationships, and he admits that he failed to model those negotiations.

*See* Noll Dep. at 109:02-110:23, 112:4-113:21, 360:2-11.  In these circumstances, Plaintiffs'

attack on Dr. Ordover rests entirely on their unsupported conjecture regarding which rights RSNs

could license from teams in the but-for world, and that conjecture provides no basis for assailing

Dr. Ordover's economic opinions.[8]

      The second reason Plaintiffs' argument fails is that Dr. Ordover is not offering legal

opinions and, in particular, is not opining on how "the ultimate rights to the content" would be

allocated in the but-for world.  Pl. Mem. at 7.  Nor do his economic opinions depend on who

---

[7] *See also*, *e.g.*, Noll Decl. at 113 ("[T]he complaints challenge the restriction that the RSNs that are included in the package cannot offer the programming on their channel, including live telecasts of games involving the teams that they now carry locally, throughout the nation  . . . ."); Noll Supp. Decl. at 5-6 ("The model also calculates the profit-maximizing price for each league's out-of-market bundle of telecasts if the RSNs that are included in each bundle were permitted to distribute their telecasts of MLB and NHL games on a nation-wide basis over both the Internet and MVPDs.").

[8] Indeed, it is Dr. Noll, and not Dr. Ordover, who is speculating about the but-for world. And Dr. Noll's speculation entails market participants acting directly contrary to their unilateral economic interests, including RSNs giving away their feeds for free so that they can be used to compete against their own offering of the same content; RSNs pricing their Internet offerings in competition with the same content they sell to MVPDs; and individual MVPDs pricing live game offerings in competition with one another (*i.e.*, Dr. Noll assumes that an MVPD offers the League package and the standalone RSN offerings, and that the MVPD prices, for example, each RSN in competition with the League package).  In contrast, Dr. Ordover's opinions regarding the market participants' economic incentives are reinforced by declarations from those participants.

legally "retain[s]" the copyright.[9]  Instead, he opines that it would not be in the economic interest of whichever entity holds exclusive rights to live game content to give away that content for free for inclusion in a competing telecast (*i.e.*, in the but-for world League package).  *See* Ordover Decl. ¶¶ 29-30, 88-98.  Plaintiffs do not challenge the substance of that opinion, which does not depend on whether the teams or the RSNs hold the exclusive right to live game content.

Nor is Plaintiffs' argument strengthened by their suggestion that Dr. Ordover is disregarding the relationship between the teams and the League.  *See* Pl. Mem. at 8.  Indeed, it is that relationship – the League is a joint venture owned by constituent teams – that renders absurd Dr. Noll's assumption that the League and each team would offer identical live game broadcasts in direct price competition with each other.  *See* Ordover Decl. ¶ 102; Pakes Decl. ¶¶ 56-61.  In a but-for world in which the League competes on price against identical content offered by its own teams and their RSNs, Dr. Ordover demonstrates that it would be in each RSN's and team's economic interest to charge a per-subscriber fee for the inclusion of live games in the League's competing package.  *See* Ordover Decl. ¶¶ 33-40, 88-98.

---

[9] Plaintiffs misrepresent that "Dr. Ordover testified that he has no knowledge of who owns what rights."  Pl. Mem. at 7.  In fact, Plaintiffs' counsel asked Dr. Ordover, over the objection that he is not being offered as a legal expert:  "Who retains the copyright to the broadcast?"  In response to that vague question calling for a legal – not an economic – conclusion, Dr. Ordover testified:  "That I don't know."  Ordover Dep. at 215:19-216:2.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

Dated:  January 16, 2015

Respectfully submitted,

Arthur J. Burke
David B. Toscano
James W. Haldin
Andrew N. DeLaney

**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
arthur.burke@davispolk.com
david.toscano@davispolk.com
james.haldin@davispolk.com
andrew.delaney@davispolk.com

*Attorneys for Defendants Comcast Corporation,
Comcast SportsNet Philadelphia, L.P., Comcast
SportsNet Mid-Atlantic L.P., Comcast SportsNet
California, LLC, and Comcast SportsNet
Chicago, LLC*

Shepard Goldfein
James A. Keyte
Paul M. Eckles
Matthew M. Martino

**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Facsimile:  (212) 735-2000
shepard.goldfein@skadden.com
james.keyte@skadden.com
paul.eckles@skadden.com
matthew.martino@skadden.com

*Attorneys for Defendants National Hockey
League, NHL Enterprises, L.P., NHL Interactive
Cyberenterprises, LLC, Chicago Blackhawk
Hockey Team, Inc., Comcast- Spectacor, L.P.,
Hockey Western New York LLC, Lemieux Group,
L.P., Lincoln Hockey LLC, New Jersey Devils
LLC, New York Islanders Hockey Club, L.P. and
San Jose Sharks, LLC*

Beth A. Wilkinson
Samantha P. Bateman

**PAUL, WEISS, RIFKIND WHARTON &
GARRISON LLP**
2001 K St. NW
Washington, D.C. 20006-1047
Telephone: (202)-223-7300
Facsimile: (202)-223-7420
bwilkinson@paulweiss.com
sbateman@paulweiss.com

*Attorneys for Defendants Office of the
Commissioner of Baseball, Major League
Baseball Enterprises Inc., MLB Advanced
Media L.P., MLB Advanced Media, Inc.,
Athletics Investment Group, LLC, The
Baseball Club of Seattle, L.L.P., Chicago
Cubs Baseball Club, LLC, Chicago White
Sox, Ltd., Colorado Rockies Baseball Club,
Ltd., The Phillies, Pittsburgh Baseball, Inc.,
and San Francisco Baseball Associates,
LLC*

_____

Bradley Ruskin
Jennifer Scullion
Colin Kass

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900
bruskin@proskauer.com
jscullion@proskauer.com
ckass@proskauer.com

Thomas J. Ostertag
Senior Vice President and General Counsel
Office of the Commissioner of Baseball
245 Park Avenue
New York, New York  10167
Telephone: (212) 931-7855
Facsimile:   (212) 949-5653

*Attorneys for Defendants Office of the
Commissioner of Baseball, Major League
Baseball Enterprises Inc., MLB Advanced Media
L.P., MLB Advanced Media, Inc., Athletics
Investment Group, LLC, The Baseball Club of
Seattle, LLLP, Chicago Cubs Baseball Club,
LLC, Chicago White Sox, Ltd., Colorado Rockies
Baseball Club, Ltd., The Phillies, Pittsburgh
Baseball, Inc., and San Francisco Baseball
Associates LLC*

Louis A. Karasik
Andrew E. Paris
Stephanie A. Jones

**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071-3004
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
lou.karasik@alston.com
drew.paris@alston.com
stephanie.jones@alston.com

*Attorneys for Defendants DIRECTV, LLC,*
*DIRECTV Sports Networks, LLC, DIRECTV*
*Sports Net Pittsburgh, LLC a/k/a Root Sports*
*Pittsburgh,  DIRECTV Sports Net Rocky*
*Mountain, LLC a/k/a Root Sports Rocky*
*Mountain, and DIRECTV Sports Net Northwest,*
*LLC a/k/a Root Sports Northwest*

14

Jonathan D. Schiller
Alan Vickery
Christopher Duffy

**BOIES, SCHILLER & FLEXNER LLP**

575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
jschiller@bsfllp.com
avickery@bsfllp.com
cduffy@bsfllp.com

*Attorneys for Defendant New York Yankees Partnership*

15

Stephen R. Neuwirth
Deborah K. Brown
Richard I. Werder, Jr.

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
stephenneuwirth@quinnemanuel.com
rickwerder@quinnemanuel.com

*Attorneys for Defendants The Madison Square
Garden Company and New York Rangers Hockey
Club*

John E. Schmidtlein
Kenneth Charles Smurzynski
James Harris Weingarten
William Jefferson Vigen

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.,
Washington, D.C. 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
jschmidtlein@wc.com
ksmurzynski@wc.com
jweingarten@wc.com
wvigen@wc.com

*Attorneys for Defendant Yankees Entertainment &
Sports Network, LLC*