# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS LAUMANN, FERNANDA GARBER, ROBERT SILVER, DAVID DILLON, GARRETT TRAUB, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>NATIONAL HOCKEY LEAGUE, et al.,<br><br>      Defendants | 12-cv-1817 (SAS) |

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

This Class Action Settlement Agreement (the "Agreement") is made and entered into as of this 10th day of June 2015, by and between Plaintiffs Thomas Laumann, Robert Silver, David Dillon, and Garrett Traub (collectively, "Plaintiffs"), on behalf of themselves and all other Class Members (collectively, "Class Members," each a "Class Member"), and Defendants National Hockey League, NHL Enterprises L.P., NHL Interactive Cyberenterprises LLC, New York Rangers Hockey Club, New Jersey Devils LLC, New York Islanders Hockey Club L.P., Comcast-Spectacor L.P., Lincoln Hockey LLC, Lemieux Group, L.P., Hockey Western New York LLC, Chicago Blackhawks Hockey Team Inc., San Jose Sharks LLC, DIRECTV, LLC, DIRECTV Sports Networks LLC, DIRECTV Sports Net Pittsburgh, LLC d/b/a Root Sports Pittsburgh, Comcast Corp., Comcast Sportsnet Philadelphia, L.P., Comcast Sportsnet Mid-Atlantic, L.P., Comcast Sportsnet California, LLC, Comcast Sportsnet Chicago, LLC, and The Madison Square Garden Company (collectively, "Defendants"), each of the foregoing Parties acting by and through their respective counsel. By this Agreement, subject to Court approval,

Plaintiffs and Defendants intend to fully and finally compromise, release, resolve, discharge, and settle the Released Claims subject to the terms and conditions set forth in this Agreement.

WHEREAS, Plaintiffs have alleged in their Second Amended Class Action Complaint ("CAC") that Defendants engaged in certain conduct in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-3;

WHEREAS, the District Court certified a class seeking injunctive relief under Federal Rule of Civil Procedure 23(b)(2) but denied certification of a class seeking damages under Federal Rule of Civil Procedure 23(b)(3);

WHEREAS, Defendants dispute and deny each and every one of Plaintiffs' claims both as to the facts and the law, deny all liability to Plaintiffs and the other Class Members, have not conceded or admitted any liability, and intend to continue with a vigorous defense of this Action in the event this Agreement is not approved by the Court;

WHEREAS, Defendants, through their counsel, and Plaintiffs, through their counsel and on behalf of themselves and the other Class Members, have engaged in vigorous, arm's length negotiations that led to this Agreement, which embodies all of the terms and conditions of the Settlement among the Parties, subject to approval of this Agreement by the Court;

WHEREAS, all Parties are entering into this Agreement to settle and resolve all of Plaintiffs' claims; to avoid the uncertainties and risks of trial; to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation; and to obtain the releases, orders, and judgments contemplated by this Agreement so as to put to rest totally and finally the matters raised by Plaintiffs;

WHEREAS, Plaintiffs and Defendants agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability

2

or wrongdoing by Defendants or of the truth of any of the claims or allegations in the CAC or any prior complaint, nor an admission or evidence of any shortcomings in the factual or legal claims and allegations therein;

WHEREAS, Plaintiffs and their counsel agree that this Agreement is fair, reasonable, and adequate with respect to the interests of Plaintiffs, and should be approved by the Court pursuant to Federal Rule of Civil Procedure 23(e);

WHEREAS, this Agreement, which is subject to the approval of the Court, sets forth all of the terms and conditions of the agreement between Defendants and Plaintiffs, on behalf of themselves and Class Members;

NOW, THEREFORE, in consideration of the premises and mutual promises, covenants, and warranties contained in this Settlement Agreement and other good and valuable consideration, the receipt and sufficiency of which the Parties now acknowledge, and intending to be legally bound, the Parties agree as follows:

## A. **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" or "*Laumann*" means the above-captioned matter.

2.      "Center Ice" means the consumer product that has historically been offered to MVPD customers enabling them to view, through their MVPD service, live games designated as "out-of-market" by the NHL and its teams.

3.      "Center Ice Package" means a Center Ice offering of a particular duration and price (*e.g*., Early Bird, auto-renewal, full-season, half-season, Race for the Cup).

4.      "Class" means all individuals in the United States who purchased television service from DIRECTV and/or Comcast, which included Center Ice, and/or who purchased GCL

from the NHL Defendants or their subsidiaries, at any time between March 12, 2008, and the date on which Plaintiffs file a motion for Preliminary Approval, as certified by the Court in its May 14, 2015 Order [Dkt No. 346].

5.      "Comcast" means the Comcast Defendants and their affiliates, subsidiaries, and successors that offer MVPD service.

6.      "Comcast Defendants" means Comcast Corp., Comcast-Spectacor L.P., Comcast Sportsnet Philadelphia, L.P., Comcast Sportsnet Mid-Atlantic, L.P., Comcast Sportsnet California, LLC, and Comcast Sportsnet Chicago, LLC.

7.      "Court" means the United States District Court for the Southern District of New York.

8.      "DIRECTV" means the DIRECTV Defendants and their affiliates, subsidiaries, and successors that offer MVPD service.

9.      "DIRECTV Defendants" means DIRECTV, LLC, DIRECTV Sports Networks LLC, and DIRECTV Sports Net Pittsburgh, LLC d/b/a Root Sports Pittsburgh.

10.     "Early Bird Price" means the price for a full-season package commonly known as "Early Bird" that is generally available to consumers before the start of the regular season and up to the end of October.

11.     "Execution Date" means June 10, 2015.

12.     "Effective Date" means the date on which either (a) the time to appeal from the Final Approval Order has expired without an appeal, or (b) the Final Approval Order has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

13.     "Fairness Hearing" means the hearing held by the Court at which the Court will consider evidence and argument for the purposes of determining whether the Settlement encompassed by this Agreement and its exhibits should be granted Final Approval, whether all claims against Defendants should be dismissed with prejudice, and whether a Final Judgment should be entered.

14.     "Final Approval" means issuance of the Final Approval Order.

15.     "Final Approval Date" means the date on which the Court issues the Final Approval Order.

16.     "Final Approval Order" means an order, substantially in the form of Exhibit I attached hereto, finally approving the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure without any modification to which any Party does not consent, dismissing with prejudice all claims against Defendants, and directing the Clerk of the Court to enter Final Judgment.  Notwithstanding the foregoing, the Parties agree that an award by the Court of an amount less than that requested by Plaintiffs of any attorneys' fees, costs, or service awards, shall not affect whether an order constitutes a Final Approval Order.

17.     "Final Judgment" means entry of a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure that complies with Rule 23(c)(3) of the Federal Rules of Civil Procedure and that dismisses the Action and all claims therein on the merits with prejudice as to all Class Members, except it shall not bind any Class Member with respect to claims for damages if such Class Member files a timely and valid exclusion that is allowed by the Court.

18.     "Full-Season Package" means a Center Ice Package or GCL Package comprising substantially the entire regular season, including existing "Early Bird," auto-renewal, and "full-season" packages.

19.     "Full-Season Unbundled Package" means an Unbundled Package comprising substantially the entire regular season.

20.     "*Garber*" means *Garber v. Office of the Commissioner of Baseball*, No. 12-cv-3704 (SAS) (S.D.N.Y.).

21.     "GCL" means Game Center LIVE, the consumer product that has historically been offered to consumers enabling them to view, over the Internet, games designated as "out-of-market" by the NHL and its teams.

22.     "GCL Package" means a GCL offering of a particular duration and price (*e.g.*, Early Bird, auto-renewal, full-season, half-season, Race for the Cup).

23.     "Lead Class Counsel" means Langer Grogan & Diver, P.C.

24.     "MSG Defendants" means the New York Rangers Hockey Club and The Madison Square Garden Company.

25.     "MVPD" means a multichannel video programming distributor, including but not limited to Comcast Corp. and certain of its affiliates and DIRECTV.

26.     "NHL" means the National Hockey League.

27.     "NHL Defendants" means the NHL, NHL Enterprises L.P., NHL Interactive Cyberenterprises LLC, New Jersey Devils LLC, New York Islanders Hockey Club L.P., Comcast-Spectacor L.P., Lincoln Hockey LLC, Lemieux Group, L.P., Hockey Western New York LLC, Chicago Blackhawks Hockey Team Inc., and San Jose Sharks LLC.

28.     "Notice" means the notices of Settlement to Class Members, which are attached hereto as Exhibits C & D and described in the Notice Plan.

29.     "Notice Plan" means the plan for disseminating the Notice to Class Members, attached as Exhibit B.

30.     "Parties" means the parties to this Agreement: Plaintiffs, the Comcast Defendants, the DIRECTV Defendants, the MSG Defendants, and the NHL Defendants.

31.     "Plaintiffs" means Thomas Laumann, Robert Silver, David Dillon, and Garrett Traub.

32.     "Preliminary Approval" means the issuance of an order (the "Preliminary Approval Order") preliminarily approving the Settlement, substantially in the form of Exhibit H hereto, authorizing the distribution of the Notice and setting a date for the Fairness Hearing.

33.     "Release" means the provision releasing claims embodied in Section I, below.

34.     "Released Claims" means any and all claims released pursuant to Section I of this Agreement. Released Claims do not include the claims for damages of any individual whose request to be excluded from the Settlement is allowed by the Court in connection with Final Approval.

35.     "Released Parties" means Defendants and all NHL Member Clubs that are not named as Defendants in the Action, as well as all of Defendants' and all NHL Member Clubs' respective past and present parents, predecessors-in-interest or title, successors-in-interest or title, subsidiaries, affiliates, executives, officers, directors, employees, shareholders, owners, principals, members, managers, agents, attorneys, servants, representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of them.

36.     "Releasors" means Plaintiffs and Class Members.

37.     "Renewal Price" means the price offered for a Full-Season Package to subscribers of a package from the same distributor (NHL, Comcast, or DIRECTV) the previous season.

38.     "Settlement" means the resolution and disposition of the Action in accordance with the terms and provisions of this Agreement.

39.     "Settlement Administration Expenses" means those expenses reasonably incurred to administer the Settlement.

40.     "Unbundled Programming" means an offering of live game programming made available via the Internet or an MVPD that is substantially identical to GCL or Center Ice (respectively), but that is offered on a disaggregated basis such that consumers can purchase the games of any one NHL team on a season-long basis without needing to purchase the games of another NHL team.

41.     "Unbundled Package" means an Unbundled Programming offering of live games of a single NHL team that is of a certain duration or price (e.g., Early Bird, auto-renewal, full-season, half-season, or Race for the Cup).

**B.  Relief**

42.     GCL Unbundled Programming

a.      The NHL Defendants will offer Unbundled Programming for each and every team.  The Unbundled Programming will include all of the same telecasts of a particular team that are included in the full GCL Package and will be subject to the same policies, limitations, and NHL rules as applicable to the then-existing full GCL Package. Subject to the NHL's national telecast contracts, the availability of game feeds, and as provided in paragraph 44(g), the NHL agrees that it will continue to offer GCL and Center Ice (to the extent NHL continues to offer MVPDs Center ice) in substantially the same package form while this Paragraph 42 is in effect.

b.      The NHL Defendants will set the consumer price of all Unbundled Packages at 80% of the comparable GCL Package.  If after the first year the NHL Defendants offer the GCL Package at the Early Bird and auto-renewal prices for less than

$130, they may increase the pricing of the Unbundled Packages from 80% to up to 85%

of the comparable GCL Package.  If after the first year the NHL Defendants offer the

GCL Package at the Early Bird and auto-renewal prices for less than $100, they may

increase the pricing of the Unbundled Packages from 80% to up to 90% of the

comparable GCL Package. If any customer is entitled to any discount or special pricing

for purchase of any GCL Package, that customer must be offered the comparable

Unbundled Package for a price reflecting the percentages in this paragraph relative to that

discounted or special pricing.

      c.      The NHL will give reasonable publicity to the Unbundled Programming,

including prominently offering Unbundled Packages as alternatives to the GCL Packages

at the website points of sale.

      d.      The requirements of this Paragraph 42 will terminate after five seasons,

commencing with the 2015-2016 NHL season.

43.      <u>Center Ice Unbundled Programming</u>

      a.      The NHL Defendants will offer the right to sell Unbundled Programming

for each and every NHL team to Comcast and DIRECTV.  Such Unbundled

Programming offered will include all of the same telecasts of a particular team that are

included in the full Center Ice Package and will be subject to the same policies,

limitations, and NHL rules applicable to the then-existing full Center Ice Package.

Neither Comcast nor DIRECTV is obligated to offer the Unbundled Programming.

      b.      If Comcast or DIRECTV offers Unbundled Programming, it will set the

consumer price of each Unbundled Package at 80% of the comparable Center Ice

Package offered by that MVPD.  If after the first year Comcast or DIRECTV offers the

Center Ice Package at the Early Bird and auto-renewal prices for less than $130, it may increase the pricing of each Unbundled Package from 80% to up to 85% of the comparable Center Ice Package offered by that MVPD.  If after the first year Comcast or DIRECTV offers the Center Ice Package at the Early Bird and auto-renewal prices for less than $100, it may increase the pricing of each Unbundled Package from 80% to up to 90% of the comparable Center Ice Package offered by that MVPD.

c.      Nothing in this Agreement precludes the NHL from offering Unbundled Programming to any other MVPD that carries Center Ice.

d.      Nothing in this Agreement precludes the NHL, in its sole discretion (and consistent with its existing Center Ice distribution agreements), from offering any MVPD the ability to offer some or all Unbundled Packages grouped with one or more other team packages, or bundled with other programming.  No MVPD, including Comcast and DIRECTV, is obligated to offer any such Unbundled Package either on a standalone basis or in combination with the Unbundled Package or Unbundled Package of any other NHL team.

e.      The requirements of this Paragraph 43 will terminate after five seasons, commencing with the 2015-16 season.

44.     <u>Center Ice and GCL Price Relief</u>

a.      Neither the NHL, Comcast nor DIRECTV shall set the consumer price for a Full-Season Package higher in the 2015-2016 season than its price for the 2014-2015 season, and such prices shall be subject to the price reductions set forth below:

b.      The NHL Defendants will provide a 17.25% discount off the 2014-2015 consumer prices of all Full-Season GCL Packages that they offer for the 2015-2016

season. All Full-Season Unbundled Packages will be priced relative to the discounted price as provided in Paragraph 42(b) (*i.e.*, a single team package will be priced 20% below the discounted price for the equivalent league-wide Package).

      c.      Comcast and DIRECTV will each provide the first three (3) weeks of the 2015-2016 and 2016-2017 Center Ice seasons free to all residential subscribers (for DIRECTV) and to all interactive digital subscribers (for Comcast) to their respective MVPD service, comprising a 12.5% discount off of the price of a full-season Center Ice Package (*e.g.*, auto-renewal, Early Bird, or full-season) for that respective season. Subscribers to Comcast or DIRECTV will not need to take any action to enable the free programming.  DIRECTV and Comcast shall each publicize the availability of the free weeks of programming described herein by describing the benefit on a company webpage.  The price for a full-season Center Ice Package in 2015-2016 and 2016-2017 for any subscriber who purchases the full season will thus be reduced by 12.5% off the retail price for that respective season.  Any Unbundled Programming will be priced relative to the discounted price as provided in Paragraph 43(b) of this Agreement.

      d.      Auto-renewals of existing Center Ice and GCL subscribers will be implemented on the same basis as they have been in past years, subject to pricing and free programming requirements of this Paragraph. For the first season in which Unbundled Packages are available, before charging the subscriber for auto-renewal of GCL, the NHL will send each GCL subscriber eligible for auto-renewal a communication notifying the subscriber of the opportunity to select Unbundled Packages.

      e.      Neither the NHL, Comcast nor DIRECTV will charge a Renewal Price for the 2015-16 season that is greater than its Early Bird Price for the 2015-16 season.

f.      In the event that Comcast or DIRECTV no longer carries Center Ice, the Comcast Defendants and the DIRECTV Defendants, as applicable, will have no obligations under Paragraph 44.

g.      In the event of a sale or merger, the unbundling and pricing provisions described above in Paragraphs 42 through 44 would remain and the sale or merger would require the buyer or successor company to provide those options as described to the end of the sunset period.  Nothing in this Agreement prevents any of the Defendants from offering additional alternative products or bundles.  Any merger between DIRECTV and AT&T shall not relieve DIRECTV from its obligations under this Agreement.

**C. <u>Application for Approval</u>**

45.      Within seven calendar days of the Execution Date, and in any event no later than June 15, 2015, Plaintiffs shall submit to the Court a motion requesting that the Court enter a Preliminary Approval Order substantially in the form of Exhibit A hereto.  That motion shall request that the Court:

a.      preliminarily approve this Agreement;

b.      approve the form and content of the notices attached hereto as Exhibits C & D, approve the Notice Plan attached hereto as Exhibit B, and direct that the Notice be provided to the Class Members in accordance with the Notice Plan;

c.      set the date for a Fairness Hearing; and

d.      stay all proceedings in the Action except those proceedings provided for or required by this Agreement

46.      Within  10 days of the filing of this Agreement with the Court, Defendants shall cause notice of the proposed Settlement that meets the requirements of the Class Action Fairness

Act ("CAFA"), 28 U.S.C. § 1715, to be served on the appropriate federal and state officials. Defendants shall file with the Court a certification stating the date(s) on which the CAFA notices were sent.

47.     At least 21 days before the Fairness Hearing, Plaintiffs shall timely submit a motion for final approval of this Agreement to the Court, along with a proposed Final Approval Order substantially in the form of Exhibit E hereto.  The proposed Final Approval Order shall direct entry of a judgment that complies with Federal Rule of Civil Procedure 23(c)(3).  The proposed Final Approval Order shall include provisions pursuant to which the Court:

     a.      approves finally  the Settlement and its terms as being a fair, reasonable, and adequate settlement as to the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

     b.      provides that the Action and all claims against Defendants are dismissed with prejudice and directs the Clerk of the Court to enter Final Judgment dismissing the Action with prejudice, and, except as provided for in this Agreement, without costs;

     c.      reserves exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement; and

     d.      lists all Class Members who have timely elected to exclude themselves from the release provisions and excludes such Class Members from a Final Judgment.

48.     If the Settlement set forth in this Agreement is finally approved by the Court in its current form, or in a form not materially different therefrom, the Parties agree not to take any appeal from entry of the Final Judgment or the Final Approval Order other than an appeal by Plaintiffs of fees, costs, or Service Awards, subject to Paragraph 57.

### D. **Applicability Before Effective Date**

49.     Except as otherwise provided in this paragraph and Paragraph 56, none of the Defendants shall have any obligations under Sections B, E, G & H of the Settlement until the Effective Date.  However, if the Court issues a Final Approval Order before September 15, 2015, the NHL Defendants will abide by Paragraph 42 beginning with the 2015-2016 season whether or not any appeals or other proceedings are pending.

50.     Except as provided in Paragraph 49, the NHL Defendants, Comcast and DIRECTV shall be required to implement their respective obligations under Paragraphs 42-44 not later than the first season following the Effective Date.

51.     The membership of the Class as defined in Paragraph 4 shall not change solely as a result of any delay in implementation.

52.     If the Court has not granted Final Approval by September 15, 2015, any Party may choose to void the Settlement within seven days thereafter by written notice served on all parties to this Agreement.

53.      If the Court decides not to grant Final Approval, or if Final Approval is reversed on appeal, then upon the expiration of time for appealing such decision declining to grant or reversing the grant of Final Approval, this Agreement shall be null and void.

### E. **Service Awards**

54.     The NHL Defendants, the Comcast Defendants and the DIRECTV Defendants agree to pay each named Plaintiff a service award of up to $10,000 each (plus interest as described in Paragraph 56), subject to the determination and approval of the Court.  If the Court awards amounts less than those requested by Plaintiffs in this Action, all Parties will remain bound by their respective obligations described in all other paragraphs.

**F.** **Attorneys' Fees and Costs**

55.     Subject to Court approval, the NHL Defendants, the Comcast Defendants, and the DIRECTV Defendants agree to pay Class Counsel up to $6,500,000 in combined attorneys' fees and costs in this Action.  Any award shall not reduce any obligations described in any other paragraph. If the Court awards an amount less than that requested by Plaintiffs in this Action, all Parties will remain bound by their respective obligations described in all other paragraphs.

56.     Within 10 days of the Final Approval Date, the NHL Defendants, the Comcast Defendants, and the DIRECTV Defendants shall cause a sum in the amount of any service awards, attorneys' fees, and costs awarded by the Court to be transferred to an interest-bearing bank or investment account agreed to by the Parties.  Class Counsel shall provide the NHL Defendants, the Comcast Defendants, and the DIRECTV Defendants any required tax accounting documents prior to the Final Approval Date to facilitate the payment detailed in this Paragraph.  The NHL Defendants, the Comcast Defendants, and the DIRECTV Defendants obligations with respect to payment of service awards, attorneys' fees, and costs shall be complete upon payment into the bank or investment account. Class Counsel shall not distribute any such funds until the Effective Date.  If this Agreement does not receive Final Approval or the Settlement is voided pursuant to Paragraph 52, Class Counsel shall cause all funds and any accrued interest to be transferred back to Defendants within 10 days of the exhaustion of appeals or voiding of the Settlement, respectively.  In the event that any court disallows payment of any portion of service awards, attorneys' fees, and costs deposited into the agreed-upon bank or investment account prior to the Effective Date, Class Counsel shall promptly and in no event less than 10 business days return all disallowed funds to the NHL Defendants, the Comcast

Defendants and the DIRECTV Defendants, but shall be bound in all other respects to the obligations in this Agreement.

57.     In the event there is no appeal of the Final Order by any objector and Plaintiffs seek solely to appeal the district court's determination of fees, costs or Service Awards, the Parties agree to and consent to issuance of a separate final judgment to be entered on all other terms of the Settlement so that any appeal by Plaintiffs of the determination of fees, costs, or Service Awards does not impact the finality of the Final Order on all other matters.

### G.  Certification

58.     Within 180 days of the Effective Date, the Comcast Defendants, DIRECTV Defendants, and NHL Defendants will each provide a declaration to the Court certifying their compliance with their obligations under the terms of the Agreement.  Certification of requirements under the Notice Plan is provided for separately in the Notice Plan.

### H.  Class Notice

59.     Upon entry of a Preliminary Approval Order, the NHL Defendants, the Comcast Defendants, and the DIRECTV Defendants shall disseminate Notice substantially in the form of Exhibits C & D hereto, as specified in the Notice Plan.

60.     Not later than 7 days prior to the Fairness Hearing, the NHL Defendants, the Comcast Defendants, and the DIRECTV Defendants shall each provide a declaration to the Court certifying their respective compliance with the Notice Plan.

### I.  Release

61.     As consideration for the relief included in this Agreement, upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, Releasors hereby voluntarily and knowingly agree to fully, finally, and unconditionally release and

discharge Released Parties from any and all claims, demands, actions, suits, and causes of action relating to the conduct alleged in the Action that have been brought or could have been brought, are currently pending or were pending, whether known or unknown, suspected or unsuspected, asserted or unasserted, under or pursuant to any legal authority including but not limited to any statute, regulation, common law or equity, based on the facts alleged in the Complaint, including any claims for damages.  Releasors further waive any rights under state laws limiting the release of unknown claims, including without limitation, Cal. Civ. Code Section 1542.

62.     Specifically excluded from the release are any claims asserted in *Garber*.

63.     As further consideration for the relief included in this Agreement, upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, Releasors discharge Released Parties from any and all claims based on the conduct adopted pursuant to Section B of this Agreement, for the period from implementation of this Agreement through the sunset date set forth in Paragraph 42(d).

64.     The Parties intend that the Agreement shall be binding on all Releasors and Released Parties who do not timely and validly request exclusion from the release of damage claims.  This Agreement shall constitute, and may be pleaded as, a complete and total defense to any Released Claims if raised in any other action.

65.     All Class Members who do not timely and validly exclude themselves from the release provided for in this Agreement will be permanently barred from filing, commencing, prosecuting, intervening in, participating in as Class Members or otherwise, or receiving any benefits or other relief from any other lawsuit in any state, territorial or federal court, or any arbitration or administrative or regulatory or other proceeding in any jurisdiction to the extent that such proceeding asserts any of the Released Claims.

66.     This Agreement does not settle or compromise any claims by Plaintiffs or the other Class Members against any person or entity other than the Released Parties, nor does it release any claims other than the Released Claims.  All rights of any Class Member against any person or entity other than the Released Parties, or pertaining to any claims other than the Released Claims, are specifically reserved by Plaintiffs and the other Class Members.  The Released Claims specifically exclude the claims asserted in *Garber*.

67.     Defendants and Plaintiffs, on behalf of themselves and the other Class Members, hereby expressly agree that all provisions of this Section I together and separately constitute essential and material terms of this Agreement.

**J.   Requests for Exclusion**

68.     Each Class Member who does not file a timely written request for exclusion from the Release in accordance with the procedures set forth in the Notice shall be bound on the Effective Date by all terms of this Agreement, including the Release set out in Section I herein, and by all proceedings, orders, and judgments in this Action.

69.     No Party to this Agreement will make any effort, directly or through a third party, to influence any individual or entity to request exclusion from the Class.

**K.   Use of this Agreement**

70.     Neither this Agreement, nor any of its terms, nor any conduct or statements in negotiation, discussion, or implementation of this Agreement, nor any orders by the Court implementing this Agreement, are or shall be considered a concession or admission of wrongdoing or liability, or lack thereof, by any Party hereto.  No Party shall cite to or otherwise use or construe this Agreement, any conduct or statements in negotiation or implementation of this Agreement, or any orders by the Court implementing this Agreement as an admission of any

fault, omission, liability, or wrongdoing, or lack thereof on the part of any Party hereto. Notwithstanding the foregoing, this Agreement may be used or offered in evidence in order to enforce the terms of this Agreement, or filed in any action in support of any defense asserted by any Released Party based upon *res judicata*, collateral estoppel, release, waiver, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

71.     Neither this Agreement, nor the Settlement, nor any of the terms of the Agreement and the Settlement, nor any conduct or statements in negotiation, discussion, or implementation of this Agreement, nor any orders by the Court implementing this Agreement, nor any conduct or data resulting from this Settlement (including the fact that any Defendant is or is not offering Unbundled Programming), may be referred to or admitted in evidence by the Parties in the *Laumann* case in the event the Effective Date does not occur.

72.     Neither this Agreement, nor any of its terms, nor any conduct or statements in negotiation, discussion, or implementation of this Agreement, nor any orders by the Court implementing this Agreement, nor any conduct or data resulting from this Settlement (including the fact that any Defendant is or is not offering Unbundled Programming), may be referred to or admitted by the Parties hereto as evidence in the *Garber* case.  If any *Garber* defendant who is not a Party to this Settlement uses this Settlement, any of its terms, or any conduct or data resulting from this Settlement as evidence in the *Garber* case, Plaintiffs will be relieved of the obligations under this provision to the extent appropriate to respond to such use; provided that nothing in this sentence supersedes any other limitation on such use, including under the applicable rules of evidence.

**L.  No Appeal**

73.     Within one business day of the Effective Date, all Parties shall withdraw any interlocutory appeals of the class certification ruling in this Action or any petitions for permission to seek such review.

74.     No Party shall seek to appeal any order in this Action other than orders relating to this Settlement, except that the Parties may continue to seek permission for review of the Court's class certification ruling and to pursue such appeal in accordance with Paragraph 73.

75.     Nothing in this provision prevents any party in *Garber* from appealing any ruling in that action. This Agreement does not obligate any party to withdraw any petition for interlocutory review in *Garber*.

**M. Miscellaneous Provisions**

76.     This Agreement, including the Exhibits, constitutes the entire agreement between Plaintiffs and Defendants pertaining to the Settlement of the Action and supersedes any and all prior and contemporaneous undertakings of the Parties in connection therewith.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any Party hereto to any other person or entity concerning the subject matter hereof.  This is an integrated agreement.  This Agreement may be modified or amended only by a writing executed by Class Counsel and Defendants and approved by the Court.

77.     The Court shall retain exclusive jurisdiction over all matters relating to the implementation and enforcement of this Agreement.

78.     All terms of this Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice of law or conflict of law principles.

79.     The headings used in this Agreement are for the purposes of convenience and do not constitute part of the Agreement, and no heading shall be used to help construe the meaning of the Agreement.

80.     This Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

81.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Plaintiffs, the other Class Members, and Defendants any right or remedy under or by reason of this Agreement.

82.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs, the other Class Members, and Defendants.

83.     This Agreement may be executed in counterparts by counsel for the Parties, and a facsimile or electronic image of a signature shall be deemed an original signature for purposes of executing this Agreement.

84.     This Agreement will not be considered binding until executed by attorneys with authority to bind all Parties.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, by and on behalf of his or her respective clients.

85.     No Party may take any action that is designed to hinder or delay approval or implementation of any provision of the settlement.

86.     This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one in the same instrument, and will be effective upon execution by all parties.

21

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Agreement as of the date first herein written above.

By: _____
LANGER, GROGAN & DIVER, P.C.
Date: *June 10, 2015*
*For All Plaintiffs*

By: _____
DAVIS POLK & WARDWELL LLP
Date:
*For Defendants Comcast Corporation,*
*Comcast SportsNet Philadelphia, L.P.,*
*Comcast SportsNet Mid-Atlantic, L.P.,*
*Comcast SportsNet California, LLC, and*
*Comcast SportsNet Chicago, LLC*

By: _____
ALSTON & BIRD LLP
Date:
*For Defendants DIRECTV, LLC, DIRECTV*
*Sports Networks, LLC, DIRECTV Sports Net*
*Pittsburgh, LLC a/k/a Root Sports*
*Pittsburgh,  DIRECTV Sports Net Rocky*
*Mountain, LLC a/k/a Root Sports Rocky*
*Mountain, and DIRECTV Sports Net*
*Northwest, LLC a/k/a Root Sports Northwest*

By: _____
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Date:
*For Defendants National Hockey League,*
*NHL Enterprises, L.P., NHL Interactive*
*Cyberenterprises, LLC, Chicago Blackhawk*
*Hockey Team, Inc., Comcast-Spectacor, L.P.,*
*Hockey Western New York, LLC, Lemieux*
*Group, L.P., Lincoln Hockey, LLC, New*
*Jersey Devils LLC, New York Islanders*
*Hockey Club, L.P., and San Jose Sharks,*
*LLC*

By: _____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Date:
*For Defendants The Madison Square Garden*
*Company and New York Rangers Hockey*
*Club*

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Agreement as of the date first herein written above.


By:_____
LANGER, GROGAN & DIVER, P.C.
Date:
*For All Plaintiffs*


By:_____
DAVIS POLK & WARDWELL LLP
Date:
*For Defendants Comcast Corporation,
Comcast SportsNet Philadelphia, L.P.,
Comcast SportsNet Mid-Atlantic, L.P.,
Comcast SportsNet California, LLC, and
Comcast SportsNet Chicago, LLC*


By:_____
ALSTON & BIRD LLP
Date:
*For Defendants DIRECTV, LLC, DIRECTV
Sports Networks, LLC, DIRECTV Sports Net
Pittsburgh, LLC a/k/a Root Sports
Pittsburgh,  DIRECTV Sports Net Rocky
Mountain, LLC a/k/a Root Sports Rocky
Mountain, and DIRECTV Sports Net
Northwest, LLC a/k/a Root Sports Northwest*


By:_____
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Date: June 10, 2015
*For Defendants National Hockey League,
NHL Enterprises, L.P., NHL Interactive
Cyberenterprises, LLC, Chicago Blackhawk
Hockey Team, Inc., Comcast-Spectacor, L.P.,
Hockey Western New York, LLC, Lemieux
Group, L.P., Lincoln Hockey, LLC, New
Jersey Devils LLC, New York Islanders
Hockey Club, L.P., and San Jose Sharks,
LLC*


By:_____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Date:
*For Defendants The Madison Square Garden
Company and New York Rangers Hockey
Club*

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Agreement as of the date first herein written above.

By:_____
LANGER, GROGAN & DIVER, P.C.
Date:
*For All Plaintiffs*

By:_____
DAVIS POLK & WARDWELL LLP
Date:
*For Defendants Comcast Corporation,
Comcast SportsNet Philadelphia, L.P.,
Comcast SportsNet Mid-Atlantic, L.P.,
Comcast SportsNet California, LLC, and
Comcast SportsNet Chicago, LLC*

By:_____
ALSTON & BIRD LLP
Date:
*For Defendants DIRECTV, LLC, DIRECTV
Sports Networks, LLC, DIRECTV Sports Net
Pittsburgh, LLC a/k/a Root Sports
Pittsburgh,  DIRECTV Sports Net Rocky
Mountain, LLC a/k/a Root Sports Rocky
Mountain, and DIRECTV Sports Net
Northwest, LLC a/k/a Root Sports Northwest*

By:_____
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Date:
*For Defendants National Hockey League,
NHL Enterprises, L.P., NHL Interactive
Cyberenterprises, LLC, Chicago Blackhawk
Hockey Team, Inc., Comcast-Spectacor, L.P.,
Hockey Western New York, LLC, Lemieux
Group, L.P., Lincoln Hockey, LLC, New
Jersey Devils LLC, New York Islanders
Hockey Club, L.P., and San Jose Sharks,
LLC*

By: _____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Date: June 10, 2015
*For Defendants The Madison Square Garden
Company and New York Rangers Hockey
Club*

22

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Agreement as of the date first herein written above.

By:_____
LANGER, GROGAN & DIVER, P.C.
Date:
*For All Plaintiffs*

By:_____
DAVIS POLK & WARDWELL LLP
Date:
*For Defendants Comcast Corporation,*
*Comcast SportsNet Philadelphia, L.P.,*
*Comcast SportsNet Mid-Atlantic, L.P.,*
*Comcast SportsNet California, LLC, and*
*Comcast SportsNet Chicago, LLC*

By:_____
ALSTON & BIRD LLP
Date:
*For Defendants DIRECTV, LLC, DIRECTV*
*Sports Networks, LLC, DIRECTV Sports Net*
*Pittsburgh, LLC a/k/a Root Sports*
*Pittsburgh,* ~~DIRECTV Sports Net Rocky~~
~~Mountain, LLC a/k/a Root Sports Rocky~~
~~Mountain, and DIRECTV Sports Net~~
~~Northwest, LLC a/k/a Root Sports Northwest~~

By:_____
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Date:
*For Defendants National Hockey League,*
*NHL Enterprises, L.P., NHL Interactive*
*Cyberenterprises, LLC, Chicago Blackhawk*
*Hockey Team, Inc., Comcast-Spectacor, L.P.,*
*Hockey Western New York, LLC, Lemieux*
*Group, L.P., Lincoln Hockey, LLC, New*
*Jersey Devils LLC, New York Islanders*
*Hockey Club, L.P., and San Jose Sharks,*
*LLC*

By:_____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Date:
*For Defendants The Madison Square Garden*
*Company and New York Rangers Hockey*
*Club*

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

representatives, have agreed to this Agreement as of the date first herein written above.


By:_____
LANGER, GROGAN & DIVER, P.C.
Date:
*For All Plaintiffs*

By:_____
DAVIS POLK & WARDWELL LLP
Date:  6/10/15
*For Defendants Comcast Corporation,*
*Comcast SportsNet Philadelphia, L.P.,*
*Comcast SportsNet Mid-Atlantic, L.P.,*
*Comcast SportsNet California, LLC, and*
*Comcast SportsNet Chicago, LLC*


By:_____
ALSTON & BIRD LLP
Date:
*For Defendants DIRECTV, LLC, DIRECTV*
*Sports Networks, LLC, DIRECTV Sports Net*
*Pittsburgh, LLC a/k/a Root Sports*
*Pittsburgh,  DIRECTV Sports Net Rocky*
*Mountain, LLC a/k/a Root Sports Rocky*
*Mountain, and DIRECTV Sports Net*
*Northwest, LLC a/k/a Root Sports Northwest*

By:_____
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Date:
*For Defendants National Hockey League,*
*NHL Enterprises, L.P., NHL Interactive*
*Cyberenterprises, LLC, Chicago Blackhawk*
*Hockey Team, Inc., Comcast-Spectacor, L.P.,*
*Hockey Western New York, LLC, Lemieux*
*Group, L.P., Lincoln Hockey, LLC, New*
*Jersey Devils LLC, New York Islanders*
*Hockey Club, L.P., and San Jose Sharks,*
*LLC*


By:_____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Date:
*For Defendants The Madison Square Garden*
*Company and New York Rangers Hockey*
*Club*

Exhibit A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

THOMAS LAUMANN, et al., representing
themselves and all others similarly situated,

                              Plaintiffs,

            v.

NATIONAL HOCKEY LEAGUE, et al.,

                              Defendants.

12-cv-1817 (SAS)

ECF Case

## [PROPOSED] ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT, SCHEDULING HEARING FOR FINAL APPROVAL THEREOF, AND APPROVING THE PROPOSED FORM AND PROGRAM OF NOTICE TO THE CLASS

All parties in this matter have reached a proposed settlement (the "Settlement"), as embodied in the Class Action Settlement Agreement dated June 10, 2015 ("Agreement").[1] Plaintiffs have moved for an Order preliminarily approving the Settlement and have requested a Fairness Hearing and approval of a plan for providing notice to the class.  The Court has considered the motion as well as the Agreement and its accompanying documents.

**NOW, THEREFORE**, this _____ day of June, 2015, finding good cause,

**IT IS HEREBY ORDERED THAT:**

1.      The motion for Preliminary Approval of the Settlement is GRANTED.

---

[1] In its May 14, 2015 Order, the Court certified two separate classes, an Internet Class and a Television Class. For purposes of this Order, the Court will refer to them jointly as the "Class," unless otherwise specified.

2.      The capitalized terms used in this Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement shall have the same meanings set forth in the Agreement.

3.      The Court preliminarily approves the Settlement.  The Court finds that the Settlement is the product of arm's length negotiation by experienced counsel.  The Court further finds that the Settlement is fair, reasonable, and adequate, in the best interests of the Class, and within the range of possible approval, subject to consideration at the Fairness Hearing as set forth below.

4.      The Class certified by the Court on May 14, 2015, and subject to this Order is defined as follows:

> All individuals in the United States who purchased television service from DIRECTV and/or Comcast, or their subsidiaries, which included Center Ice, and/or who purchased NHL GameCenter Live from the NHL or its subsidiaries, between March 12, 2008 and June 10, 2015.  Excluded from the Class are Defendants and their employees, officers, directors, and legal representatives.  Also excluded from the Class are Judge Shira Scheindlin and members of her judicial staff of the United States District Court for the Southern District of New York, and members of their immediate families.

5.      The Court's class certification order dated May 14, 2015 appointed Plaintiffs Thomas Laumann, David Dillon, Robert Silver and Garrett Traub as representatives of the Class, and appointed Langer, Grogan & Diver P.C. as lead counsel for the class.

6.      The Court has jurisdiction over the subject matter of this Action and personal jurisdiction over all the Parties, including all members of the Class.

7.      A Fairness Hearing will be held on _____, 2015, at _____ in Courtroom 15C of this Courthouse before the undersigned to consider the fairness, reasonableness and adequacy of the Settlement.  The foregoing date, time, and place of the Fairness Hearing shall be set forth in the notice and publications ordered herein,

2

but shall be subject to adjournment or change by the Court without further notice to the Members of the Class other than that which may be posted at the Court and on the Court's website.

8.      The Court finds that the notice set forth in the Parties' Notice Plan—attached as Exhibit B to the Agreement—satisfies the requirements of due process, the Federal Rules of Civil Procedure and any other applicable laws and rules; constitutes the best notice that is practicable under the circumstances; is otherwise fair and reasonable; and shall constitute due and sufficient notice to all persons entitled thereto. Accordingly, the notice set forth in the Notice Plan is the only notice that is required to be provided.

9.      The notice procedures shall begin as soon as practicable and shall be completed within 60 days from the date of this order.

10.     The Court approves Heffler Claims Group as the Settlement Administrator ("Administrator").

11.     The Court approves the exclusion procedure set forth in Section J of the Agreement and in the Notice.  Any Class member so excluded shall not be bound by the Settlement to the extent described in Section I of the Agreement and in the Notice. Exclusions must be prepared and sent to the Administrator as set forth in the Notice Plan and must be properly completed and postmarked no later than August 31, 2015.

12.     Absent a Court Order to the contrary, any Class member who does not file a valid and timely request for the limited exclusion referred to in Paragraph 11 shall be bound by all proceedings, orders and judgments of the Court pertaining to the Class, including

3

the Final Judgment and any order of dismissal dismissing with prejudice all claims of

Class members, and the release of claims as set forth in the Agreement.

13.     The Court approves the objection procedure set forth in the Notice and the

Agreement.  Notices of objection must be properly completed and filed with the

Court no later than August 31, 2015.  The manner set forth in the Notice Plan in

which an objection shall be prepared, filed, and delivered is explained in detail in the

Notice and is approved by the Court.

14.     Any party wishing to respond in writing to a class member who files an objection

shall file a response with the Court no later than August 31, 2015 or alternatively

may include a response with the motion for final approval or any supporting brief

filed by Defendants.

15.     At least 21 days before the Fairness Hearing, Plaintiffs shall file with the Court a

motion for final approval of the Settlement along with a proposed Final Approval

Order substantially in the form of Exhibit E to the Agreement.

16.     All proceedings in the above-captioned *Laumann v. NHL* action are hereby stayed,

except those proceedings required by or provided for by the Settlement until such

time as the Court renders a final decision regarding the approval of the Settlement and,

if it approves the Settlement, enters final judgment and dismisses this action with

prejudice.

17.     If the Settlement is terminated in accordance with the Agreement or does not go

into effect because no Final Approval is granted by this Court or for any other

reason, this Order shall become null and void, and shall be without prejudice to the

rights of the parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order.

18.     Nothing in this Order, the Agreement, any other settlement-related document, anything contained herein or therein or contemplated hereby or thereby, or any proceedings undertaken in accordance with the terms set forth in the Agreement or herein or in any other Settlement-related document, shall constitute, be construed as, or be deemed evidence of or an admission or concession by Defendants as to the validity of any claim that has been or could have been asserted.

19.     The Clerk of the Court is respectfully requested to terminate the pending motion for preliminary approval of the Settlement.

**IT IS SO ORDERED.**


_____

**HON. SHIRA SCHEINDLIN**
**UNITED STATES DISTRICT JUDGE**

# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS LAUMANN, FERNANDA GARBER, ROBERT SILVER, DAVID DILLON, GARRETT TRAUB, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NATIONAL HOCKEY LEAGUE, et al.,<br><br>                    Defendants | 12-cv-1817 (SAS) |

## NOTICE PLAN

**A.  Notice Generally:**

1.  Provided that the Court grants preliminary approval and approves (1) this Notice Plan and (2) the form of the Notices attached to the Settlement Agreement as Exhibits C and D, all class members shall, to the extent practicable, be provided individual notice by email or first class mail or publication as set forth below within 45 days of such approval.

2.  All class members who purchased NHL GameCenter LIVE shall be provided with notice by email, whether they are current GCL subscribers or not.

3.  Class members who purchased NHL Center Ice from DIRECTV who currently subscribe to DIRECTV shall be provided with notice by email or first-class mail.

4.  Class members who purchased NHL Center Ice from DIRECTV who no longer subscribe to DIRECTV shall be provided with notice by email or first-class mail.

5.  Class members who purchased NHL Center Ice from Comcast during the 2014-15 season and who currently subscribe to Comcast shall be provided with notice by first-class mail.

6.  Publication notice pursuant to Section D below shall constitute, *inter alia*, notice by Comcast to class members who purchased Center Ice from Comcast but who did not purchase Center Ice from Comcast during the 2014-15 season, which class members shall not be provided with individual notice.

7. All class members shall receive notice by publication pursuant to Section D below.

**B.  Email Notice:**

8. Email notices shall be sent to all email addresses associated with any class member's account except those that are known to be no longer current.

9. Email notices shall be sent from an email address that is customarily used to send information to customers. The return email address shall be chosen to minimize the likelihood that the email will be filtered as spam by the recipient's email service or program.

10. Standard procedures shall be employed for ensuring and verifying that email is not being filtered at an excessive rate, and email will be resent to correct problems as necessary.

11. Email notices shall contain subject-line text substantially in the form of, "NHL GameCenter LIVE Class Action Settlement Notice" or "NHL Center Ice Class Action Settlement Notice" as applicable.

12. The email shall contain either (a) the text of the form of notice attached at Exhibit C to the Settlement Agreement, or alternatively (b) the text of the form of notice attached at Exhibit D to the Settlement Agreement.

13. Any Class Member sent email notice from DIRECTV whose email is returned as undeliverable shall be entitled to mailed notice. For such Class members to whom notice is sent to multiple email addresses, mailed notice is required only if the email is undeliverable to all email addresses.

**C.  First-Class Mail:**

14. For current subscribers to Comcast or DIRECTV, notice shall be directed to the mailing address associated with the Class member's account for billing purposes.

15. For Class Members who purchased Center Ice from DIRECTV but are no longer subscribers to DIRECTV, notice shall be directed to the current address of the Class Member.

16. All first-class mail notice is to be addressed to the Class Member's last known postal address, which will be updated through the National Change of Address ("NCOA") database.

17. The form of notice to be mailed is attached to the Settlement Agreement as Exhibit C.

**D.  Publication Notice:**

18. Following preliminary approval by the Court, the NHL Defendants, the Comcast Defendants and the DIRECTV Defendants shall provide notice to all class members by publication, as set forth below.

19. Publication notice will take the form of links and Internet banner ads linked to the official settlement website where those who click on the ad or link may obtain detailed information including an online version of the notice attached as Exhibit C to the Settlement Agreement.  The links and banner ads will appear on selected websites, as set forth below.  The online version of the notice will be maintained by the Settlement Administrator.

20. The banner ads and links will include text substantially similar to the following:  "Class Action Settlement for NHL GameCenter LIVE and NHL Center Ice Purchasers Means Special Benefits Available – Click Here to Find Out More".

21. The NHL Defendants shall cause a link to appear on the NHL's website associated with GameCenter LIVE and other pages on NHL.com targeted to reach class members.

22. Pursuant to a publication notice program (the "Publication Notice Program") overseen by Heffler Media, LLC ("Heffler"), in consultation with the Parties, Heffler shall arrange for links and banner ads to appear on other sites selected to reach hockey fans, including sports-oriented or hockey-oriented websites.  In total, the online notice program is estimated to deliver 20,000,000 targeted impressions over a 30-day period.

23. The terms of the Publication Notice Program shall be consistent with the terms of the written proposal prepared by Heffler dated June 8, 2015.  In its role in overseeing the Publication Notice Program, Heffler shall have no responsibility for or control over the publication notice provided by the NHL on the GCL website or other pages on NHL.com. Further, while Heffler may purchase ad space at negotiated rates on websites associated with a Defendant, Heffler shall have no power or authority to require any Defendant to place any link or advertising on any website associated with that Defendant.

24. The sole obligation of the NHL Defendants, the Comcast Defendants and the DIRECTV Defendants with respect to the Publication Notice Program (as distinct from the NHL Defendants' obligation set forth in paragraph 21 above) shall be to pay for the costs of the Publication Notice Program, subject to the limit set forth in paragraph 23 above.


**E.  Certification**

25. Not later than 7 days before the Fairness Hearing, the NHL Defendants, the Comcast Defendants and the DIRECTV Defendants shall each provide a declaration to the Court certifying their respective compliance with this Notice Plan.

# Exhibit C

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# NOTICE TO PERSONS WHO PURCHASED GAME CENTER LIVE FROM THE NHL OR PURCHASED NHL CENTER ICE FROM COMCAST OR DIRECTV

**You Have an Opportunity to Subscribe to Discounted Individual Team Packages through NHL GameCenter LIVE and You May Have Access to Free NHL Center Ice Programming through Comcast or DIRECTV**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A proposed settlement (the "Settlement") has been reached in a class action lawsuit brought on behalf of consumers who purchased NHL GameCenter LIVE from the NHL or purchased NHL Center Ice from Comcast or DIRECTV between March 12, 2008, and June 10, 2015. The proposed settlement is between the individuals who brought that lawsuit and the defendants. The defendants are the National Hockey League ("NHL"), NHL Enterprises L.P., NHL Interactive Cyberenterprises LLC, New York Rangers Hockey Club, New Jersey Devils LLC, New York Islanders Hockey Club L.P., Comcast-Spectacor L.P., Lincoln Hockey LLC, Lemieux Group, L.P., Hockey Western New York LLC, Chicago Blackhawks Hockey Team Inc., San Jose Sharks LLC, DIRECTV, LLC, DIRECTV Sports Networks LLC, DIRECTV Sports Net Pittsburgh, LLC d/b/a Root Sports Pittsburgh, Comcast Corp., Comcast Sportsnet Philadelphia, L.P, Comcast Sportsnet Mid-Atlantic, L.P., Comcast Sportsnet California, LLC, Comcast Sportsnet Chicago, LLC, and The Madison Square Garden Company ("Defendants"). The lawsuit alleges that the NHL's rules establishing the local broadcast territories and associated blackouts violated federal antitrust laws. If you purchased NHL GameCenter LIVE or NHL Center Ice from Comcast or DIRECTV between March 2008 and June 2015, **your legal rights are affected whether you act or do not act. Please read this notice carefully.**

- The lawsuit alleges that the territorial allocation of broadcast rights within the NHL assigned to each of its member clubs and thereafter sold to regional sporting networks violated federal antitrust laws, provides out of market consumers with fewer choices, and inflates prices charged to view broadcasts of live professional hockey games. Defendants dispute Plaintiffs' factual and legal claims and deny any wrongdoing and liability, as well as any adverse effect on consumer choices and that prices charged have been inflated. The parties have concluded that it is in their best interests to settle the litigation to avoid the expense, inconvenience, and uncertainty of litigation.

- In May 2015, the Court granted in part and denied in part Plaintiffs' motion for class certification. The court held that the individuals who filed this suit could represent a class for the purposes of seeking injunctive relief, but not damages.

- Under the Settlement and subject to the NHL's continued delineation of its clubs' local broadcast territorial rights, and associated blackout practices, the NHL has agreed to provide seasonal packages of single team's out-of-market games through NHL GameCenter LIVE for each and every NHL Club (*e.g.*, a stream of just the Chicago Blackhawks' out-of-market games). These individual team bundles will be priced at 20% below the cost of the full

GameCenter LIVE package.  The NHL has also agreed to make this option available to Comcast and DIRECTV so that they may offer unbundled seasonal packages of single team games for each and every NHL Club available through NHL Center Ice, although Comcast and DIRECTV are not obligated to offer such packages.

- The NHL has also agreed to provide a 17.25% discount to the retail prices for the early bird, renewal, and full-season packages of GameCenter LIVE for the 2015-2016 season.  This discount will also apply to any unbundled single team package, meaning that the price for a single team package will be discounted by 17.25% thereby maintaining the 20% discount set forth above.

- Comcast and DIRECTV have further agreed to provide the first three weeks of the 2015-2016 and 2016-2017 Center Ice seasons for free, comprising a 12.5% discount off of the price of a full-season Center Ice package for those customers who subscribe to Center Ice, provided that Comcast and DIRECTV each respectively carries Center Ice for the applicable season.

- The Court in charge of this case still needs to decide whether or not to approve the Settlement.  If the Court approves the Settlement, and after any appeals are resolved, the benefits will be provided automatically to class members.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Automatic Benefits** | You do NOT need to submit a claim form to obtain these benefits. They will be provided automatically. |
| **Exclude Yourself by August 31** | You may exclude yourself from the Settlement in the case and retain your rights to commence a lawsuit against Defendants for damages caused by the conduct challenged in this case. Because the Court certified an injunctive class only and Defendants have agreed to change the ways in which the packages are sold to all consumers as part of this Settlement, you cannot opt out of the injunctive claims. |
| **Object by August 31** | Submit a written statement to the Court about why you don't like the Settlement.  If you submit an objection, you may also ask to be heard by the Court at the final Fairness Hearing. |
| **Go to Fairness Hearing** | You may attend the fairness hearing on [date] whether or not you object or intend to speak. |
| **Do Nothing** | You will receive the full benefits of the Settlement, and will give up your rights to initiate any lawsuit against Defendants regarding the NHL's territorial broadcast limitations on its clubs and related blackout practices, including a lawsuit for alternative or additional relief to that provided here. |

**\*\*These rights and options – and the deadlines to exercise them – are explained in this notice. \*\***

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**……………………………………………………………….. 4

    1.  Why is this Notice being provided?

    2.  What is this lawsuit about?

    3.  Why is this a Class Action?

    4.  Why is there a settlement?

**WHO IS IN INCLUDED IN THE SETTLEMENT**……………………………………………... 5

    5.  How do I know if I am part of the Settlement?

    6.  Are there exceptions to being included in the Settlement?

**THE SETTLEMENT – WHAT YOU GET IF YOU QUALIFY**……………………………………... 5

    7.  What does the Settlement provide?

    8.  What am I giving up if the Settlement is given final approval?

**EXCLUDING YOURSELF FROM THE DAMAGES RELEASE**  ……………………………………… 6

    9.  If I exclude myself, can I get anything from the Settlement?

    10.  If I do not exclude myself, can I sue later?

    11.  How do I exclude myself from the damages release?

    12.  How can I tell the Court I don't like the Settlement?

    13.  What is the difference between objecting and asking to be excluded?

**THE LAWYERS WHO REPRESENT YOU**……………………………………………………… 8

    14.  Do I have a lawyer in the case?

    15.  How will the lawyers in the case be paid?

**THE FAIRNESS HEARING**……………………………………………………………… 8

    16.  How will the Court decide whether to approve the Settlement?

    17.  When and where will the Court decide whether to approve the Settlement?

    18.  Do I need to come to the hearing?

    19.  May I speak at the hearing?

**OTHER INFORMATION**………………………………………………………………… 9

    20.  What happens if I do nothing?

    21.  How do I get more information?

# BASIC INFORMATION

| **1.   Why is this Notice being provided?** |
| --- |

Judge Shira Scheindlin of the United States District Court for the Southern District of New York authorized this notice to inform you about a proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the Settlement.  This notice explains the lawsuit, the Settlement, and your legal rights.

The case is known as *Laumann v. National Hockey League, et al.*, Case No. 12-cv-1817, which was filed in 2012.  The people who sue are called "Plaintiffs."  The companies being sued are collectively called the "Defendants."

This notice summarizes the Settlement, but you can view the complete Settlement Agreement at www._____.com.

| **2.   What is this lawsuit about?** |
| --- |

Plaintiffs allege that Defendants violated federal law by agreeing to allocate the country into exclusive territories in which certain teams would have the exclusive right to broadcast hockey games.  Plaintiffs claim that this caused inflated prices for live hockey broadcasts and limited consumer options for viewing NHL hockey broadcasts.  Defendants deny Plaintiffs' allegations, deny any wrongdoing, and contend that the challenged rules increased the quality and availability of NHL hockey programming, and increased consumer choice at reasonable prices, as well as providing other benefits.

| **3.   Why is this a Class Action?** |
| --- |

In a class action, one or more people sue on behalf of other people who have similar claims.  If allowed by a court, all of these other people become part of a "class" or "Class Members."  One lawsuit resolves the claims of all Class Members, except for any who exclude themselves from the class.  In this case, the Court held that the individuals who filed this suit could represent a class for the purposes of seeking practice changes and a declaration that Defendants' conduct is illegal, but could not pursue damages claims on behalf of the class.

| **4.   Why is there a Settlement?** |
| --- |

The Court did not decide in favor of Plaintiffs or Defendants.  Instead, both sides agreed to settle this case to avoid the burden, cost and risk of further litigation.  The Settlement does not mean that any law was broken or that Defendants did anything wrong.  By settling, Defendants are not admitting any wrongdoing or liability.  Defendants continue to deny all factual and legal claims in this case.  Plaintiffs and their lawyers think the Settlement is best for all Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT

**5.  How do I know if I am part of the Settlement?**

The Settlement includes all purchasers of NHL GameCenter LIVE and individuals who purchased NHL Center Ice through either Comcast or DIRECTV between March 12, 2008 and June 10, 2015.  The class is defined as follows:

> All individuals in the United States who purchased television service from DIRECTV and/or Comcast, or their subsidiaries, which included NHL Center Ice, and/or who purchased NHL GameCenter LIVE from the National Hockey League or its subsidiaries or affiliates.

**6.  Are there exceptions to being included in the Settlement?**

Yes.  The following are not included in the Settlement:

- Officers, directors, or employees of any of the Defendants or any entity in which any of the Defendants have a controlling interest, and the affiliates, legal representatives, attorneys, heirs, or assigns of any of the Defendants; and

- Judge Shira Scheindlin and members of her judicial staff of the United States District Court for the Southern District of New York, and members of their immediate families.

## THE SETTLEMENT – WHAT YOU GET AND GIVE UP IF YOU QUALIFY

**7.  What does the Settlement provide?**

- Subject to  teams' local broadcast territories and related blackout practices, individual team Internet season packages for each and every NHL team will be offered by the NHL priced at 20% below the NHL GameCenter LIVE Package price.  These individual Internet packages will be offered for the next 5 seasons after which the NHL will no longer be obligated to offer unbundled Individual Team packages.

- The NHL will allow Comcast and DIRECTV the opportunity to offer similar packages.

- For the 2015-2016 season, all GameCenter LIVE subscribers will be entitled to a discount of 17.25% off the 2014-2015 retail prices for the early bird, renewal, and full season packages of GameCenter LIVE.  This discount will also apply to any unbundled single team package, meaning that the 17.25% discount will maintain the 20% discount.  For example, next season, a fan will be able to purchase an individual team's out-of-market games for an early bird price of $106 instead of the current cost of $159 for GameCenter LIVE, and will be able to purchase the full GameCenter LIVE package at an early bird price of $132.

- Comcast and DIRECTV have agreed to provide the first 3 weeks of the 2015-2016 and 2016-2017 Center Ice seasons for free to all of their interactive digital subscribers, comprising a

12.5% discount off of the price of a full-season Center Ice package for those consumers who subscribe to Center Ice, provided that Comcast and DIRECTV each respectively carries Center Ice for the applicable season.

**8.   What do I give up if the Settlement is given Final Approval?**

If the Settlement is given Final Approval, you and all other Class Members will release certain claims defined in the Settlement as "Released Claims."  In general terms, Class Members who do not validly request to be excluded from the Settlement will release all Defendants from any claims that have been or could have been asserted based upon the facts alleged in the complaint, including claims for money damages. In addition, for the next five years you will release any claims based on the conduct permitted by the Settlement.  If the Settlement is given Final Approval, the claims that were asserted against Defendants in the lawsuit will be dismissed with prejudice.

## EXCLUDING YOURSELF FROM THE DAMAGES RELEASE

If you want to keep any right to seek monetary damages from Defendants for the dispute in this case, then you must take steps to exclude yourself from that portion of the Settlement. Because Defendants have agreed to change the ways in which the packages are sold to all consumers, excluding yourself only would allow you to pursue monetary claims.  You will not be able to pursue additional injunctive relief.

**9.   If I do not exclude myself, can I sue later?**

No.  Unless you exclude yourself from the damages release, you give up the right to sue Defendants for any claims that this Settlement resolves.

**10. How do I exclude myself from the Settlement?**

To exclude yourself from the damages release, you must either do so by following the instructions at the Settlement website, www._____.com, or by sending a letter by mail clearly stating that you want to be excluded from the Settlement in *Laumann v. National Hockey League, et al.*, Case No. 12-cv-1817.  Include your name, address, telephone number, signature, and date, and mail your request for exclusion to:

[CLAIMS ADMINISTRATOR ADDRESS]

All requests must be completed or postmarked by August 31, 2015**.**

If you do not follow these procedures, you will lose any opportunity to exclude yourself from the Settlement for all claims, including claims for past damages.

**11. How can I tell the Court that I object to the Settlement?**

You can object to the Settlement if you do not like some part or all of it.  You must give reasons why you think the Court should not approve the Settlement.  You may also object to Plaintiffs' Counsel's request for attorneys' fees, reimbursement of expenses, and Plaintiff incentive awards.  To object, you must file your objection with the Court no later than August 31, 2015, and mail your objection to these five addresses postmarked no later than August 31, 2015.

| PLAINTIFFS' COUNSEL | COUNSEL FOR DEFENDANTS |
|---|---|
| Edward Diver<br>Howard I. Langer<br>Peter Leckman<br>LANGER, GROGAN & DIVER, P.C.<br>1717 Arch Street, Suite 4130<br>Philadelphia, PA 19103 | Shepard Goldfein, Esq.<br>James A. Keyte, Esq.<br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>Four Times Square<br>New York, New York 10036<br><br>Arthur J. Burke, Esq.<br>David B. Toscano<br>James W. Haldin, Esq.<br>DAVIS POLK & WARDWELL<br>450 Lexington Avenue<br>New York, New York 10017<br><br>Louis A. Karasik, Esq.<br>Andrew E. Paris, Esq.<br>Stephanie A. Jones, Esq.<br>ALSTON & BIRD LLP<br>333 South Hope Street, 16th Floor<br>Los Angeles, California 90071<br><br>Stephen R. Neuwirth, Esq.<br>Deborah Brown, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010 |

**12. What happens if I object and the Settlement is approved?**

If the Settlement is finally approved, you will remain a Class Member regardless of whether you objected. You will remain bound by the terms of the Settlement and will not be able to sue Defendants about the claims in this case.

**13. What is the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the relevant part of the Settlement. Excluding yourself is telling the Court that you do not want to be part of that aspect the Settlement. If you exclude yourself for purposes of pursuing past damages claims, you cannot object to the release of damages claims, because that aspect of the Settlement no longer affects you. You may object to the provisions providing for changes in the Defendants' practices whether or not you object.

## THE LAWYERS WHO REPRESENT YOU

**14. Do I have a lawyer in this case?**

The Court appointed Langer Grogan & Diver, P.C. to represent the class. This firm, together with other law firms that have assisted them, are called "Plaintiffs' Counsel." You will not be charged for these lawyers, because their fees will be paid separately by Defendants if the court approves the fees. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

**15. How will the lawyers in the case be paid?**

Plaintiffs' Counsel will ask the Court to award attorneys' fees and reimbursement of the expenses they had in this case. Plaintiffs' Counsel's application for attorneys' fees and expenses will be filed with the Court by [DATE] and posted on the Settlement website. Plaintiffs' Counsel will request $6,500,000 in fees and costs, which is based on the hourly fees they have incurred over the last 4 years and the litigation expenses they have incurred over this time.

Plaintiffs' Counsel will also ask for incentive awards of up to $10,000 for each named Plaintiff for their services on behalf of the class.

The fees, costs, and incentive awards will be paid by certain Defendants.

## THE COURT'S FAIRNESS HEARING

**16. How will the Court decide whether to approve the Settlement?**

At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider Plaintiffs' Counsel's request for attorneys' fees and expenses and Plaintiff incentive awards. If there are objections, the Court will consider them. If you do not file a written objection, you will not be permitted to speak at the Fairness hearing. After the Fairness Hearing, the Court will decide whether to approve the Settlement and how much to award for fees, expenses and incentive awards.

**17. When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Fairness Hearing at [TIME], on [DATE], at the United States Courthouse, 500 Pearl Street, New York, New York 10007-1312.  A motion for final approval of the Settlement will be filed by Plaintiffs' Counsel by [DATE].  The motion will also be posted on the Settlement website.

The Fairness Hearing may be moved to a different date or time without additional notice, so it is recommended that you periodically check www._____.com for updated information.  Members of the Class who support the Settlement do not need to appear at the hearing or take any other action to indicate their approval of the Settlement.  Members of the Class who object to the Settlement are not required to attend the Fairness Hearing.

**18. Do I need to come to the hearing?**

No.  Plaintiffs' Counsel will answer any questions the Court may have.  However, you are welcome to attend the hearing at your own expense.  If you send in a written objection, you do not have to come to the Fairness Hearing to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You also may pay your own lawyer to attend the Fairness Hearing, but his or her attendance is not necessary.

**19. May I speak at the hearing?**

You may speak at the Fairness Hearing if you submitted an objection as described in the answer to Question 11 and stated in your objection that you wish to be heard at the Fairness Hearing.  You must file your objection by August 31, 2015 or you will not be heard.

If you choose to appear in person at the Fairness Hearing, you can appear yourself or by retaining an attorney at your own expense to appear on your behalf.  If the attorney is appearing on behalf of more than one Class Member, he or she must identify each of those Class Members.

## OTHER INFORMATION

**20. How do I get more information?**

This notice summarizes the Settlement.  More details are in the Settlement Agreement available at www._____.com.  If you still have questions, call the Settlement Administrator at [TOLL FREE NUMBER] or send an email to [EMAIL] or write to [MAILING ADDRESS].

**Please do not contact Defendants, their counsel, the Court or the Clerk's office.**

# Exhibit D

# NOTICE TO PERSONS WHO PURCHASED GAMECENTER LIVE FROM THE NHL OR PURCHASED NHL CENTER ICE FROM COMCAST OR DIRECTV

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

A proposed settlement has been reached in a class action lawsuit brought on behalf of consumers who purchased NHL GameCenter LIVE from the NHL or purchased NHL Center Ice from Comcast or DIRECTV between March 12, 2008 and June 10, 2015.  The lawsuit alleges that the NHL's rules establishing local broadcast territories for NHL teams and associated black-outs violated federal antitrust laws.  The defendants deny any wrongdoing or liability.  In May 2015, the court held that the individuals who filed the lawsuit could represent a class to seek injunctive relief but not to seek money damages.

The parties have agreed to settle to avoid the uncertainty, expense and burden of litigation.  Under the settlement, the NHL will sell seasonal packages of each team's out-of-market games through NHL GameCenter LIVE at  20% below the cost of the full GameCenter LIVE package, subject to its teams' local broadcast territories and associated black-outs.  The NHL also will provide Comcast and DIRECTV with the option of selling single-team seasonal packages through NHL Center Ice on the same terms.

Under the settlement, the NHL will sell NHL GameCenter LIVE for the 2015-16 season at a 17.25% discount from the 2014-15 price, and also will sell single-team packages at a 17.25% discount.  Comcast and DIRECTV will provide the first three weeks of the 2015-16 and 2016-17 seasons for free (for all customers who can subscribe to Center Ice), and discount the price for customers who purchase the rest of the season by 12.5%.

The settlement also provides for the defendants' payment of the plaintiffs' attorneys fees and the costs of the suit.

The settlement is subject to court approval.  If the settlement is approved, then class members who do not exclude themselves from the class will be bound by the release of claims, including any right to seek money damages, as fully explained in the detailed notice referenced below.

This is just a summary of the settlement. A detailed notice describing the settlement and your rights affected by the settlement is available at www._____.

# Exhibit E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THOMAS LAUMANN, et al., representing
themselves and all others similarly situated,

                              Plaintiffs,                    12-cv-1817 (SAS)

                    v.                                       ECF Case

NATIONAL HOCKEY LEAGUE, et al.,

                              Defendants.

**[PROPOSED] ORDER APPROVING CLASS SETTLEMENT**
**AND AWARDING ATTORNEYS FEES AND COSTS**

        **AND NOW,** this _____ day of_____, 2015, the Court having held a hearing on

plaintiffs' motions for approval of a proposed settlement (the "Settlement"), as embodied

in the Class Action Settlement Agreement dated June 10, 2015 (the "Agreement"), and

for an award of attorneys' fees and costs, and good cause appearing, finds that:

        1.      The capitalized terms used in this Order shall have the same meanings set

forth in the Agreement.

        2.      The Class certified by the Court on May 14, 2015 and subject to this Order

is defined as follows:

        All individuals in the United States who purchased television service from
        DIRECTV and/or Comcast, or their subsidiaries, which included Center Ice,
        and/or who purchased NHL GameCenter Live from the NHL or its subsidiaries,
        between March 12, 2008 and June 10, 2015.  Excluded from the Class are
        Defendants and their employees, officers, directors, and legal representatives.
        Also excluded from the Class are Judge Shira Scheindlin and members of her
        judicial staff of the United States District Court for the Southern District of New
        York, and members of their immediate families.

3.      The Court finds that it has jurisdiction over the subject matter of the

Action, the Class Representatives, the Class Members and all Defendants.

### BACKGROUND

4.      The parties wish to settle and resolve all of plaintiffs' claims to avoid the

uncertainties and risks of trial, to avoid further expense, inconvenience, and the

distraction of burdensome and protracted litigation, and to obtain the releases, orders, and

judgments contemplated by the Agreement so as to put to rest totally and finally the

matters raised by plaintiffs.

5.      The Settlement was reached after arms-length negotiations, including

multiple mediation sessions before Hon. Stephen M. Orlofsky, a retired federal district

court judge.  Further, the Settlement was reached only after counsel litigated this case for

more than three years by, inter alia:  (a) engaging in extensive fact and expert discovery;

(b) litigating defendants' motion for summary judgment, which was denied in full in

August 2014; and (c) litigating an effort by Plaintiff to certify a class, including a full

evidentiary hearing.

### APPROVAL OF SETTLEMENT

6.      The Court has reviewed the terms of the Agreement and all objections and

comments thereto and finds that the Settlement is fair, reasonable, and adequate under the

circumstances of this case and in the best interests of the Class.   Accordingly, the

Settlement is approved.  In evaluating the Settlement, the Court considered a variety of

factors and makes the following findings:

- The named Plaintiffs are adequate representatives of the Class;

2

- The notice provisions set forth in the parties' Notice Plan-attached as Exhibit B to the Agreement-constitute the only notice required;

- The notice provided to the Class pursuant to the Notice Plan satisfied the requirements of due process, the Federal Rules of Civil Procedure, and other applicable laws and rules. The notice was the best notice practicable under the circumstances, was otherwise fair and reasonable, and constituted valid, due, and sufficient notice;

- The terms of the Settlement provide substantial and direct benefits to the Class;

- Class Counsel are experienced trial practitioners with substantial experience in class action litigation and recommended approval of the Settlement;

- The timing of the Settlement weighs strongly in favor of approval. The parties have been sufficiently informed to assess the strengths and weaknesses of their positions and to make a reasoned evaluation of whether and on what terms to settle. The facts of the case are well-developed, the parties have exchanged substantial written discovery and taken numerous depositions, and they have presented the positions of their respective experts regarding matters involved in adjudicating the class issues and merits of the litigation;

- The risk and uncertainty to Class Members with respect to the prospect of continued litigation also weigh significantly in favor of approval. In evaluating the Settlement, the Court compares the benefits of settling

3

against the risks and burdens of potentially protracted litigation. Defendants deny any fault, wrongdoing, or liability whatsoever and have asserted numerous affirmative defenses.  In particular, the Defendants deny that the territorial rules violate the antitrust laws.  The outcome of any trial to ultimately adjudicate Plaintiffs' claims is uncertain.  The Agreement provides the Class Members with immediate and certain resolution and alleviates their burden to prove their claims.

- The Settlement allows the Class Members to avoid significant expenses associated with litigation of the issues raised in this Action and to obtain concrete benefits that might otherwise be unavailable to them in the event of an adverse result;

- The future expense and likely duration of the litigation, and its uncertainty of outcome, supports approval of the Settlement; and

- Nothing indicates an absence of good faith or lack of independence between Plaintiffs and Defendants regarding the Settlement.

## **DISCLAIMER OF ADMISSIONS**

7.    The provisions of this Final Order and Judgment are entered as a result of the agreement and settlement of the parties.  The parties' stipulation and this Final Order and Judgment are not intended to, and shall not be construed as, an admission or finding, express or implied, of any fault, liability or wrongdoing by defendants.

8.    The Agreement and this Final Order and Judgment are not admissions of liability or fault by Defendants or the Released Parties, or a finding of the validity of any claims in the Action or of any wrongdoing or violation of law by the Defendants or any

4

Released Parties.  The Agreement and settlement are not a concession by the Parties. Neither this Final Order and Judgment, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of, or admission by the Defendants, the Released Parties, or any of them.  Notwithstanding the foregoing, nothing in this Final Order and Judgment shall be interpreted to prohibit its use in a proceeding to consummate or enforce the Agreement or this Final Order and Judgment, or to defend against the assertion of Released Claims in any other proceeding, or as otherwise required by law.

## APPLICABILITY

9.     The provisions of this Final Order and Judgment are applicable to and binding upon defendants, and upon all members of the Class, their heirs, administrators, executors, and assignees and dismiss in their entirety and with prejudice the claims of all members of the Class against defendants, as more fully set out in Section I of the Agreement, without costs to any party against any other party except as otherwise provided herein.

10.     This Final Order and the Final Judgment entered pursuant to it is intended by the parties and the Court to be *res judicata* and to prohibit and preclude any prior, concurrent or subsequent litigation, arbitration, or other proceeding brought individually, or in the name of, and/or otherwise on behalf of the Plaintiffs or members of the Class with respect to any and all claims or issues which were or could have been raised in the Action as of the Effective Date, as set forth in Section I of the Agreement.

5

11.     Plaintiffs and all members of the Class, individually and on behalf of their affiliates, agents, successors and assigns, are deemed to have conclusively settled and released any future claims against defendants related to the transactions and conduct alleged in the Complaint, as more fully set forth in Section I of the Agreement.

12.     Plaintiffs and all members of the Class, individually and on behalf of their affiliates, agents, successors and assigns, are deemed to have covenanted not to sue, institute, or instigate any legal, equitable or administrative proceedings against defendants for any Released Claims, as more fully set forth in Section I of the Agreement.

13.     Each member of the Class is barred and permanently enjoined from prosecuting any action in state or federal court, arbitration, or before any administrative body against defendants with respect to any Released Claims, as more fully set forth in Section I of the Agreement.

**IT IS THEREFORE HEREBY ORDERED AND DECREED THAT A FINAL JUDGMENT BE ENTERED AS FOLLOWS:**

A.  The Settlement in this action is approved as fair, reasonable and adequate and shall be consummated in accordance with its terms.

B.  An incentive award is made to the named plaintiffs in the aggregate amount of $_____, to be paid by Defendants and allocated by Class counsel in accordance with the Agreement.

C.  An attorneys' fee of _____and costs of _____ are awarded to Class counsel. Defendants shall pay, in accordance with the Agreement, said sums to Lead counsel for allocation by Lead counsel to Class counsel.

D.  Except as to any damages claims of the persons listed on Exhibit A hereto, this action is dismissed with prejudice; and, except as provided in this Final Approval Order, without costs.

E.  Any damage claims of the persons listed on Exhibit A hereto are dismissed without prejudice.

F.  All members of the Class are hereby barred and enjoined from the institution and prosecution, either directly or indirectly, of any other actions in any court or arbitration forum asserting any claims released pursuant to the Agreement.

G.  The Court reserves exclusive jurisdiction over the Settlement, the Agreement, and the award of attorneys' fees.

**IT IS SO ORDERED.**

_____
**HON. SHIRA SCHEINDLIN**
**UNITED STATES DISTRICT JUDGE**